AMERICAN MOTORS SALES CORPORATION AND HUBERT VICKERS D/B/A 421 MOTOR SALES, PETITIONERS v. ELBERT L. PETERS, COMMISSIONER OF MOTOR VEHICLES, RESPONDENT AND JAMES WILSON PENNELL D/B/A PENNELL MOTOR COMPANY, INTERVENOR-RESPONDENT

No. 8110SC514

(Filed 7 September 1982)

1. **Appeal and Error § 6.2; Injunctions § 8— appeal from order denying stay of order revoking franchise—substantial right affected**

The petitioners' appeal from an order denying a stay of the Commissioner of Motor Vehicles' order which revoked a franchise that American Motors had given 421 Motor Sales to sell Jeeps was interlocutory; however, a substantial right of the petitioners was affected by the refusal to stay the court's order which will work an injury to the petitioners if not corrected before an appeal from the final judgment. G.S. 1-277.

2. **Automobiles and Other Vehicles § 5; Monopolies § 2; Unfair Competition § 1— Commissioner of Motor Vehicles having power to prevent "unfair . . . acts or practices"**

G.S. 20-301 gives the Commissioner of Motor Vehicles the power to prevent "unfair . . . acts or practices" and granting a franchise in violation of G.S. 20-305(5) would be an unfair act or practice which the Commissioner has the power to prevent.

3. **Automobiles and Other Vehicles § 5; Monopolies § 2; Unfair Competition § 1— Commissioner of Motor Vehicles' order finding unfair act or practice—no error not to stay order pending outcome of review**

The superior court did not err in failing to stay the Commissioner of Motor Vehicles' order revoking an agreement granting an additional Jeep franchise in a certain trade area pursuant to G.S. 20-305(5) where (1) G.S. 20-305(5) does not violate Article I, § 34 of the Constitution of North Carolina, (2) the clean hands doctrine did not apply to the original franchisee because it had not

reached its potential for Jeep sales, and (3) written notice was not given to the original franchisee before a new franchise was granted as prescribed by G.S. 20-305(5). G.S. 150A-48.

Judge MARTIN (R. M.) dissenting.

APPEAL by petitioners from *Hobgood, Judge.* Order entered 2 April 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 12 January 1982.

This appeal arises from the revocation by the Commissioner of Motor Vehicles of a franchise to sell Jeeps granted by American Motors Sales Corporation to Hubert Vickers, doing business as 421 Motor Sales. James Wilson Pennell, doing business as Pennell Motor Company, has been licensed to sell Jeeps in North Wilkesboro since 1960. His franchise has been extended several times, the last time being on 27 February 1976 for a period of five years. For several years prior to 1979, Pennell had not sold the number of Jeeps which American Motors felt he should sell. On 12 June 1979, Mr. Pennell was present at a sales meeting at which time a Mr. Ellison, representing American Motors, told him that American Motors would grant an additional Jeep franchise in Pennell's trade area. In the fall of 1979, Mr. Pennell determined that American Motors had granted a Jeep franchise to 421 Motor Sales. He requested the Commissioner of Motor Vehicles to hold a hearing pursuant to Article 12, Chapter 20 of the General Statutes. The Commissioner conducted a hearing on 9 March 1981. The Commissioner made findings of fact in accordance with the evidence and ordered that American Motors' grant of a Jeep franchise to 421 Motor Sales be enjoined, invalidated and revoked. The Commissioner further ordered that American Motors be enjoined from granting Jeep franchises in the North Wilkesboro area without first complying with the procedure set forth in G.S. 20-305(5).

On 11 March 1981, Judge Godwin stayed the order of the Commissioner pending a determination of the matter by the Superior Court of Wake County, to which American Motors and 421 Motor Sales had appealed. This stay order was issued *ex parte* upon a motion by the appellants. On 2 April 1981, Judge Hobgood signed an order denying a motion by the appellants that the stay order be continued pending the outcome of a hearing in

superior court on the Commissioner's order. The petitioners appealed from this order by Judge Hobgood.

*Attorney General Edmisten, by Deputy Attorney General William W. Melvin, for respondent appellee Commissioner of Motor Vehicles.*

*Womble, Carlyle, Sandridge and Rice, by James M. Stanley, Jr., for petitioner appellants American Motors Sales Corporation and 421 Motor Sales.*

*White and Crumpler, by Robert B. Womble, for intervenor respondent appellee Pennell Motor Company.*

*Johnson, Gamble and Shearon, by Samuel H. Johnson and Richard J. Vinegar, for North Carolina Automobile Dealers Association, amicus curiae.*

WEBB, Judge.

[1]  The first question we face is whether the appeal should be dismissed as premature. The petitioners appeal from an order denying a stay of the Commissioner of Motor Vehicles' order which revoked the franchise that American Motors had given 421 Motor Sales to sell Jeeps. This order denying a stay did not dispose of the case and is interlocutory. *Setzer v. Annas*, 286 N.C. 534, 212 S.E. 2d 154 (1975) held the granting of a preliminary injunction requiring the defendant to remove a gate on a private road in which the plaintiff claimed a right of way affected a substantial right and was appealable under G.S. 1-277. In this case, as in *Setzer*, the petitioners were required to give up a right pending a hearing. We hold pursuant to *Setzer* a substantial right of the petitioners was affected by the refusal to stay the court's order which will work an injury to the petitioners if not corrected before an appeal from the final judgment. *See Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 251 S.E. 2d 443 (1979). We shall consider the appeal.

[2]  The Commissioner of Motor Vehicles acted under Article 12, Chapter 20 of the General Statutes in revoking the franchise of 421 Motor Sales. This Article provides in pertinent part:

"§ 20-305. *Coercing dealer to accept commodities not ordered; threatening to cancel franchise; preventing transfer*

American Motors Sales Corp. v. Peters

*of ownership; granting additional franchises; terminating franchises without good cause; preventing family succession.* — It shall be unlawful for any manufacturer . . .

\* \* \*

(5) To grant an additional franchise for a particular line-make of motor vehicle in a trade area already served by a dealer or dealers in that line-make unless the franchisor first advised in writing such other dealers in the line-make in the trade area; provided that no such additional franchise may be established in the trade area if the Commissioner has determined, if requested by any party within 30 days after receipt of the franchisor's notice of intention to establish the additional franchise, and after a hearing on the matter, that there is reasonable evidence that after the grant of the new franchise, the market will not support all of the dealerships in that line-make in the trade area; trade areas are those areas specified in the franchise agreement or determined by the Motor Vehicle Dealers' Advisory Board.

§ 20-301. *Powers of Commissioner.*

\* \* \*

(b) The Commissioner shall have power to prevent unfair methods of competition and unfair or deceptive acts or practices.

(c) The Commissioner shall have the power in hearings arising under this Article to determine the place where they shall be held; to subpoena witnesses; to take depositions of witnesses; and to administer oaths.

\* \* \*

§ 20-305.3. *Hearing notice.* — In every case of a hearing before the Commissioner authorized under this Article, the Commissioner shall give reasonable notice of each such hearing to all interested parties, and the Commissioner's decision shall be binding on the parties, subject to the rights of judicial review and appeal as provided in Chapter 150A of the General Statutes . . . ."

We believe G.S. 20-301 gives the Commissioner the power to prevent "unfair . . . acts or practices" and that granting a franchise in violation of G.S. 20-305(5) would be an unfair act or practice. The Commissioner has held a hearing and determined that the granting of the franchise by American Motors to 421 Motor Sales violated G.S. 20-305(5).

[3] The petitioners contend the Superior Court of Wake County was in error for not staying the Commissioner's order pending the outcome of the review. G.S. 150A-48 provides:

> "At any time before or during the review proceeding, the person aggrieved may apply to the reviewing court for an order staying the operation of the agency decision pending the outcome of the review. The court may grant or deny the stay in its discretion upon such terms as it deems proper and subject to the terms of G.S. 1A-1, Rule 65."

The petitioners argue the court abused its discretion in not staying the order for several reasons. They say first that the Commissioner does not have the power to issue an injunction. We find no merit in this argument because we do not believe the Commissioner issued an injunction. It is true that in the decretal portion of his order, he used the word "enjoin." The order was not treated by any of the parties as an injunction, but as an order revoking the franchise agreement. The order was appealed to the Superior Court of Wake County for review as an order by a state agency.

The petitioners next contend that G.S. 20-305(5) violates Article I, Section 34 of the Constitution of North Carolina which provides:

> "Perpetuities and monopolies are contrary to the genius of a free state and shall not be allowed."

The petitioners argue that G.S. 20-305(5) is unconstitutional on its face as allowing monopolies, or unconstitutional as applied in this case because it granted a monopoly to Pennell. We cannot so hold. We believe American Motors could, without violating Article I, Section 34 of the North Carolina Constitution, give Pennell the exclusive right to sell Jeeps in the North Wilkesboro trade area. We do not believe it is granting a monopoly for the General Assembly to require American Motors to do what it could bargain

to do if it desires to execute a contract. *See Mazda Motors v. Southwestern Motors,* 36 N.C. App. 1, 243 S.E. 2d 793 (1978), *modified in part on other grounds,* 296 N.C. 357, 250 S.E. 2d 250 (1979) for a discussion of the unequal bargaining power between manufacturers and automobile dealers and the necessity for the General Assembly to aid the dealers. We are not dealing with an agreement between competitors not to compete. We are dealing with a contract between a manufacturer and a dealer. The State has enacted legislation which gives automobile dealers some protection after they have made investments and taken other action, relying on contracts they have made. We believe the State has the power to do this.

We do not believe *In re Hospital,* 282 N.C. 542, 193 S.E. 2d 729 (1973) and *State v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731 (1949) relied on by the petitioners are applicable. Our Supreme Court held in *Hospital* that the State did not have the power acting through a commission to deny a private corporation the right to build a hospital. In *Ballance* our Supreme Court held that the State could not under the police power require a license to engage in the business of photography. Neither of these cases deal with the situation we face in this case. We hold that the State can require that if an automobile manufacturer gives a franchise to a dealer to sell automobiles, that the manufacturer include in the terms of the franchise agreement the right that the dealer have an exclusive franchise in a certain trade area so long as the dealer abides by the terms of the franchise agreement.

The petitioners also contend the court erred in not granting a stay because Pennell had unclean hands. They say this is so because Pennell had not reached its potential for Jeep sales and the Commissioner so found and concluded that American Motors had reason to terminate its franchise. Assuming the clean hands doctrine applies to this case, we do not believe Pennell had unclean hands. The fact that Pennell may not have been as competent in business as it could have been does not show he had engaged in any sharp practice or inequitable conduct which would give rise to a holding that he had unclean hands.

The petitioners argue further that the court erred in not granting the stay because the record shows that the Commissioner erred in finding that American Motors did not give Pennell

timely notice of its intention to grant an additional franchise in Pennell's trade area. They argue that the fact that Mr. Pennell was told by Mr. Ellison that an additional Jeep franchise would be granted in Pennell's trade area complied with the notice requirement of G.S. 20-305(5). G.S. 20-305(5) requires that written notice be given to a franchisee before a new franchise may be granted. We do not believe the verbal notice given by Mr. Ellison complies with the statute.

We hold that Judge Hobgood did not abuse his discretion by refusing to stay the order of the Commissioner of Motor Vehicles.

Affirmed.

Judge WELLS concurs.

Judge MARTIN (Robert M.) dissents.

Judge MARTIN (Robert M.), dissenting.

I dissent from the majority opinion and find support for my dissent in *Georgia Franchise Practices v. Massey-Ferguson*, 244 Ga. 800, 262 S.E. 2d 106 (1979).

In that case, the Georgia Supreme Court considered the constitutionality of certain provisions of the Motor Vehicle, Farm Machinery and Construction Equipment Franchise Act. It found Ga. Code § 84-6610(a)(4) (Supp. 1979), very similar to our N.C. Gen. Stat. § 20-305(5) (1978), unconstitutional, as it violated the Georgia Constitution's prohibition against contracts and agreements which diminish competition or encourage monopolies. Ga. Const., Art. III, § 8, par. 8. The Georgia court recognized that "the clear purpose of these sections is to permit franchised dealers to restrict competition and create a monopoly in the retail sale of motor vehicles. The provisions permit the establishment of a market allocation among franchised dealers and thereby prevent any competition between dealers and companies in the sale of the same line-make equipment." 244 Ga. at 801, 262 S.E. 2d at 107-08.

Because the North Carolina Constitution also contains an anti-monopoly clause, this court, like the Georgia Supreme Court, should find N.C. Gen. Stat. § 20-305(5) unconstitutional, as it encourages monopolies "contrary to the genius of a free state." N.C.

American Motors Sales Corp. v. Peters

Const., Art. I, § 34. The curtailment of monopolies created by statute is not new to North Carolina. In 1972 our Supreme Court held unconstitutional a North Carolina statute requiring a certificate of need in order to construct and operate a private hospital, because it encouraged the creation of monopolies in the medical facilities industry. *In re Hospital,* 282 N.C. 542, 193 S.E. 2d 729 (1979). I see no reason why the analysis of the automobile dealership industry should be treated any differently than the analysis of "the practice of the healing arts and . . . operation of institutions for that purpose." 282 N.C. at 549, 193 S.E. 2d at 734. The fact that it is "the common experience in America that competition is an incentive to lower prices, better service and more efficient management" applies equally to private automobile dealerships and private hospitals. 282 N.C. at 549, 193 S.E. 2d at 734. The court in *In re Hospital* recognized this similarity stating that "[w]hile in many respects a hospital is not comparable to an ordinary business establishment, we know of no reason to doubt its similarity thereto in response to the spur of competition." 282 N.C. at 549, 193 S.E. 2d at 734.

While the majority is correct in pointing out that "[w]e are not dealing with an agreement between competitors not to compete" but are instead concerned only with the manufacturer-dealer contract, it is difficult to discern how the resulting monopolies can be distinguished. Both are equally injurious to competition and its resulting consumer benefits, and the discouragement of intrabrand, as well as interbrand, competition has been prohibited by N.C. Const., Art. I, § 34.

I, like the Georgia Supreme Court, have been unable to discover the public interest being protected by § 20-305(5) and justifying this exercise of the State's police power. See 244 Ga. at 802, 262 S.E. 2d at 108. But I am content to rest my dissent on the thesis that the "laws may not be procured by men already engaged in an occupation in order to keep others out. The exclusion of others from a common right is a prominent feature of monopolistic action forbidden by our fundamental law." *State v. Warren,* 252 N.C. 690, 693, 114 S.E. 2d 660, 664 (1960).