ROCKFORD-COHEN GROUP, LLC and LYNETTE THOMPSON, Plaintiffs-Appellees
v.
NORTH CAROLINA DEPARTMENT OF INSURANCE, COMMISSIONER OF INSURANCE WAYNE GOODWIN, NORTH CAROLINA BAIL AGENTS ASSOCIATION, a North Carolina Nonprofit Corporation, Defendants-Appellants

No. COA13-124

Filed 5 November 2013

1. **Appeal and Error—interlocutory orders and appeals—preliminary injunction—substantial right**

Plaintiffs' motion to dismiss defendant North Carolina Bail Agents Association's appeal from the trial court's order granting plaintiffs a preliminary injunction was denied. Although the appeal was interlocutory, the preliminary injunction required defendant to "give up" the right to do business as the exclusive provider of creditable bail bondsmen training and to receive remuneration for providing such education and thus affected a substantial right.

2. **Constitutional Law—North Carolina—prohibition against monopolies—preliminary injunction**

    The trial court did not err by granting plaintiffs' motion for preliminary injunction declaring that 2012 N.C. Sess. Law, ch. 183, "An Act to Provide for the Pre-Licensing and Continuing Education of Bail Bondsmen and Runners[,]" violated Article I, Section 34 of the North Carolina Constitution. By assigning creditable bail bondsmen training solely to one group (defendant), where previously anyone could apply to the Commissioner of Insurance to provide such training, the law violated the prohibition against impermissible monopolies.

Appeal by Defendant North Carolina Bail Agents Association from order entered 1 October 2012 by Judge Donald W. Stephens in Superior Court, Wake County. Heard in the Court of Appeals 13 August 2013.

*Hartzell & Whiteman, L.L.P., by J. Jerome Hartzell, for Plaintiffs-Appellees.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Phillip J. Strach; and Steven A. McCloskey, for Defendant-Appellant North Carolina Bail Agents Association.*

McGEE, Judge.

Rockford-Cohen Group, LLC and Lynette Thompson ("Plaintiffs") filed a motion for preliminary injunction against the North Carolina Department of Insurance, Commissioner of Insurance Wayne Goodwin, and North Carolina Bail Agents Association. Plaintiffs sought a declaration that the 2012 N.C. Sess. Law, ch. 183, "An Act to Provide for the Pre-Licensing and Continuing Education of Bail Bondsmen and Runners[,]" (hereinafter "Act") violated Article I, Section 34 of the North Carolina Constitution on perpetuities and monopolies. The trial court entered an order on 1 October 2012, granting Plaintiffs' motion for preliminary injunction. Defendant North Carolina Bail Agents Association (hereinafter "Defendant") filed notice of appeal. Defendants North Carolina Department of Insurance and Commissioner Wayne Goodwin did not appeal the order.

## I. Motion to Dismiss the Appeal

[1] Plaintiffs moved to dismiss Defendant's appeal as interlocutory. It is well-established that a preliminary injunction is an interlocutory order. *Revelle v. Chamblee*, 168 N.C. App. 227, 229, 606 S.E.2d 712, 713-14 (2005).

There is no immediate right of appeal from an interlocutory order unless the order affects a substantial right. N.C. Gen. Stat. §§ 1-277, 7A-27(d)(1) (2011).

To determine whether immediate appeal is warranted, this Court uses a two-part test, "with the first inquiry being whether a substantial right is affected by the challenged order and the second being whether this substantial right might be lost, prejudiced, or inadequately preserved in the absence of an immediate appeal." *Hamilton v. Mortg. Info. Servs., Inc.*, 212 N.C. App. 73, 78, 711 S.E.2d 185, 189 (2011).

The substantial right test "is more easily stated than applied. It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Action Cmty. Television Broadcasting Network, Inc. v. Livesay*, 151 N.C. App. 125, 129, 564 S.E.2d 566, 569 (2002).

Defendant contends that a substantial right was affected because the injunction "seeks to prevent [Defendant] from performing the duty that has been assigned to it by statute." However, as Plaintiffs note, the injunction does not command Defendant to perform or refrain from performing any action. Rather, the only action the injunction requires is that the North Carolina Department of Insurance "shall not in any way discriminate against any approved provider."

In its brief, Defendant compares itself to the North Carolina State Bar for its responsibility to protect the public. When an agent of the State that is charged with enforcing statutes chooses to appeal rulings limiting the enforcement of those statutes, the right to enforce the statute is substantial, and the rulings are immediately appealable. *See Johnston v. State*, ___ N.C. App. ___, 735 S.E.2d 859, 864 (2012), *disc. review allowed*, ___ N.C. ___, 738 S.E.2d 360 (2013); *Gilbert v. N.C. State Bar*, 363 N.C. 70, 76-77, 678 S.E.2d 602, 606 (2009).

Defendant, however, is not a state agency or an agent of the State that is charged with enforcing the statutes regarding bail bondsmen. Rather, the Commissioner of Insurance has the "full power and authority to administer the provisions" of Article 71, "Bail Bondsmen and Runners." N.C. Gen. Stat. § 58-71-5 (2011). The Act affected provisions of Article 71 of the General Statutes. As previously noted, the Commissioner of Insurance chose not to appeal the order. This argument is therefore unavailing.

Defendant further contends that the right to do business and collect remuneration as the exclusive provider of creditable bail bondsmen training constitutes a substantial right. We agree.

In *American Motors Sales Corp. v. Peters*, 58 N.C. App. 684, 294 S.E.2d 764 (1982), *rev'd in part on other grounds*, 311 N.C. 311, 317 S.E.2d 351 (1984), this Court held that the denial of a stay of the Commissioner of Motor Vehicles' order revoking a franchise that American Motors had given "421 Motor Sales" was interlocutory. This Court held that the order denying a stay "required [the appellants] to give up a right pending a hearing." *American Motors*, 58 N.C. App. at 686, 294 S.E.2d at 766. Although this Court does not state so explicitly, the context of the opinion in *American Motors* indicates the right at issue was the right to do business pursuant to the franchise granted by American Motors. This Court held that the right was substantial, and the appeal was heard.

In the present case, the trial court's grant of Plaintiffs' motion for a preliminary injunction required Defendant to "give up" the right to do business as the exclusive provider of creditable bail bondsmen training and to receive remuneration for providing such education. Pursuant to *American Motors*, we review the merits of Defendant's appeal.

## II.  Merits of the Appeal

**[2]** The issue Defendant asks this Court to review is "whether the General Assembly's policy decision to assign creditable bail bondsmen training to [Defendant] . . . constitutes an impermissible monopoly in violation of the North Carolina Constitution." The precise question of whether the decision to assign creditable bail bondsmen training to one particular group, where previously anyone could apply to the Commissioner of Insurance to provide such training, appears to be one of first impression.

The Courts of this State recognize "a presumption in favor of the constitutionality of a statute." *Gardner v. Reidsville*, 269 N.C. 581, 594, 153 S.E.2d 139, 150 (1967). "It is well settled in this State that the Courts have the power, and it is their duty in proper cases, to declare an act of the General Assembly unconstitutional —— but it must be plainly and clearly the case." *Id.* "If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people." *Id.*

The Act at issue in this case states:

> (a) In order to be eligible to take the examination required to be licensed as a runner or bail bondsman under G.S. 58-71-70, each person shall complete at least 12 hours of education as provided by the North Carolina Bail

Agents Association in subjects pertinent to the duties and responsibilities of a runner or bail bondsman, including all laws and regulations related to being a runner or bail bondsman.

(b) Each year every licensee shall complete at least three hours of continuing education as provided by the North Carolina Bail Agents Association in subjects related to the duties and responsibilities of a runner or bail bondsman before renewal of the license.

2012 N.C. Sess. Laws, ch. 183 § 1. The underlined portion is the newly enacted language.

The North Carolina Constitution states: "Perpetuities and monopolies are contrary to the genius of a free state and shall not be allowed." N.C. Const. Art I, § 34. Although the constitutionality of a statute assigning creditable bail bondsmen training exclusively to one group, where previously anyone could apply, has not been addressed by our appellate courts, there are several instructive cases involving Article I, Section 34 of our Constitution.

In *American Motors Sales Corp.*, 311 N.C. 311, 317 S.E.2d 351 (1984), our Supreme Court reviewed the constitutionality of legislation affecting vehicle sales. Our Supreme Court described a monopoly as resulting "from ownership or control of so large a portion of the market for a certain commodity that competition is stifled, freedom of commerce is restricted, and control of prices ensues." *Id.* at 315, 317 S.E.2d at 355. However, the Act in the present case does not affect a private market, like vehicle sales.

Rather, the Act affects the market for creditable bail bondsman training that the General Assembly created when it allowed groups and individuals to apply to the Commissioner of Insurance to provide such training. *See* "An Act to Adopt Risk-Based Capital Requirements for Life and Health Insurance Companies, To Make Corrections and Technical Amendments in the Insurance Laws, And To Amend the Scholarship Provisions of the Firemen's Relief Fund in the Insurance Code", 1994 N.C. Sess. Laws, ch. 678 § 32. Thus, we must look beyond *American Motors* for guidance.

"Monopoly, as originally defined, consisted in a grant by the sovereign of an exclusive privilege to do something which had theretofore been a matter of common right." *State v. Harris*, 216 N.C. 746, 761 6 S.E.2d 854, 864 (1940).

> The exclusion of others from such common right is still considered a prominent feature of monopoly, and the consequent loss to those excluded of opportunity to earn a livelihood for themselves and their dependents . . . has been considered the prime reason for the public policy then adopted into the Constitution.

*Id.*

Our Supreme Court discussed the "common right" analysis in *Thrift v. Elizabeth City*, 122 N.C. 31, 30 S.E. 349 (1898). At issue was a contract between Elizabeth City and an individual "to construct and maintain waterworks" for a term of thirty years. *Id.* at 32-33, 30 S.E. at 350. The Court did not wish "to be understood as conceding the power of the Legislature itself to grant such exclusive privileges." *Id.* at 37, 30 S.E. at 351. However, the Court acknowledged there were "decisions to the contrary in other jurisdictions, but in all of them, where the power is admitted, it is strictly construed." *Id.* The Court observed that "the error has apparently arisen from adopting the substance of *Lord Coke's* definition of a monopoly, as 'an exclusive right granted to a few of something, which was before of common right.' " *Id.*

> Our theory of government, proceeding directly from the people, and resting upon their will, is essentially different, at least in principle, from that of England; and common law maxims and definitions, framed while the judges were still under the spell of the Feudal System, must be construed by us in the light of changed conditions.

*Id.* "Under our system of government, all rights and privileges are primarily of common right, unless their restraint becomes necessary for the public good[.]" *Id.*

Defendant contends that the "opportunity to provide State-mandated training to bail bondsmen is not a common right" because the General Assembly created creditable bail bondsmen training. However, Defendant misconstrues the common right at issue. The General Assembly created the right to apply to provide creditable bail bondsmen training in the previous version of this statute, 1994 N.C. Sess. Laws, ch. 678 § 32. Then, the General Assembly amended the statute to exclude all others from being considered by the Commissioner of Insurance to provide creditable bail bondsmen training. 2012 N.C. Sess. Laws, ch. 183 § 1.

Thus, the common right that has been lost is the right to be considered by the Commissioner of Insurance for approval to provide creditable

bail bondsmen training. By excluding all others, the General Assembly deprived all others of the opportunity "to earn a livelihood for themselves and their dependents[.]" *Harris*, 216 N.C. at 761, 6 S.E.2d at 864.

Another instructive case is *Madison Cablevision v. City of Morganton*, 325 N.C. 634, 386 S.E.2d 200 (1989). Madison Cablevision argued that the City's refusal to grant cable franchises to private applicants was unconstitutional. *Id.* at 653, 386 S.E.2d at 211. Our Supreme Court disagreed. The City did not foreclose "for any period the possibility that franchises might be granted to other applicants." *Id.* at 654, 386 S.E.2d at 211. "The City expressly left open the possibility that other cable companies could apply for and obtain a franchise in the future and committed itself to review the over-build situation five years after it issued its decision to operate a municipal system." *Id.*

By contrast, in the present case, the General Assembly granted an exclusive right to Defendant to provide creditable bail bondsmen training, thereby foreclosing the possibility that others could provide this training. Furthermore, unlike *Madison Cablevision*, the General Assembly did not expressly leave open the possibility that others might be approved in the future to provide creditable bail bondsman training.

Defendant contends that, "if the General Assembly has the greater authority to license bondsmen and create for them a training requirement, then it has the lesser power to determine who will conduct that training[,]" citing *Watkins v. Iseley*, 209 N.C. 256, 183 S.E. 365 (1936). Our Supreme Court in *Watkins* analyzed the constitutionality of "ordinances requiring operators of taxicabs or other motor vehicles for hire in the city of Raleigh to secure liability insurance[.]" *Id.* at 257, 183 S.E. at 365. The challenge was that the ordinances discriminated "against those engaged in operating motor vehicles for hire in favor of persons operating such vehicles for their private ends[.]" *Id.*

*Watkins* does not cite, rely upon, or analyze the prohibition on monopolies and perpetuities. The ordinances in *Watkins* were not alleged to violate the prohibition on monopolies and perpetuities. *Watkins* neither supports nor undermines a conclusion of the Act's constitutionality under N.C. Const. Art I, § 34.

In considering the constitutionality of the Act, this Court is mindful of the "common right" analysis that our Supreme Court discussed in *Thrift*. When the General Assembly previously allowed all to apply to the Commissioner of Insurance, the right to be considered to provide creditable bail bondsmen training was in the manner of a common right. Subsequently, the General Assembly granted an exclusive right to

Defendant to conduct creditable bail bondsmen training. In so doing, the General Assembly granted to Defendant an exclusive right which was previously a common right.

In accordance with the power and duty of the courts described in *Gardner*, this Court concludes that the Act making Defendant the exclusive provider of creditable bail bondsmen training violates Article I, Section 34 of the North Carolina Constitution. The trial court's order is affirmed. Because of our holding as to this issue, we do not reach Defendant's remaining arguments.

Affirmed.

Judges STEELMAN and ERVIN concur.