*358 ERVIN, Judge,
dissenting.
Although I agree with my colleagues concerning the proper resolution of Defendant’s challenge to the denial of his motion to dismiss based upon governmental immunity and justiciabiity grounds, I am unable to agree with their determination that a portion of Defendant’s appeal from the issuance of the preliminary injunction did not affect a substantial right and is not subject to immediate appellate review in its entirety. In addition, after evaluating the validity of Defendant’s challenge to the preliminary injunction on the merits, I believe that the trial court erred by issuing the preliminary injunction and that the portion of the trial court’s order preliminarily enjoining Defendant from engaging in certain enforcement-related activities should be reversed in its entirety. As a result, I concur in the Court’s opinion in part and dissent from the Court’s opinion in part.
Appealability
As a general proposition, “there is no right of immediate appeal from interlocutory orders and judgments,” Travco Hotels, Inc. v. Piedmont Natural Gas Co., Inc., 332 N.C. 288, 291, 420 S.E.2d 426, 428 (1992) (citing Goldston v. American Motors Corp., 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990)), such as the one at issue here. However, immediate appellate review of interlocutory orders is available “when the trial court enters a final judgment as to one or more, but fewer than all, claims or parties and certifies there is no just reason for delay” pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), or when “the [interlocutory] order affects a substantial right under” N.C. Gen. Stat. § l-277(a) and N.C. Gen. Stat. § 7A-27(b)(3). Sharpe v. Worland, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (citing DKH Corp. v. Rankin-Patterson Oil Co., 348 N.C. 583, 585, 500 S.E.2d 666, 668 (1998), and Oestreicher v. American Nat’l Stores, 290 N.C. 118, 121-22, 225 S.E.2d 797, 800 (1976)). In view of the fact that the trial court did not include, and could not properly have included, a certification pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), in its order, the only basis upon which this Court might have jurisdiction over Plaintiff’s appeal from that portion of the trial court’s order preliminarily enjoining Defendant from engaging in certain enforcement-related activities is in the event that that portion of the trial court’s order affects a substantial right.
“The ‘substantial right’ test for appealability is more easily stated than applied.” Bailey v. Goode, 301 N.C. 205, 210, 270 S.E.2d 431, 434 (1980) (citing Waters v. Qualified Personnel, Inc., 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978)). An interlocutory order “affects a substantial right” for purposes of N.C. Gen. Stat. § 1-277(a) and N.C. Gen. Stat. *359 § 27(b)(3) in the event that it “deprive [s] the appealing party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered.” Cook v. Bankers Life & Cas. Co., 329 N.C. 488, 491, 406 S.E.2d 848, 850 (1991) (citing Waters, 294 N.C. at 207, 240 S.E.2d at 343). “Essentially a two-part test has developed-the right itself must be substantial and the deprivation of that substantial right must potentially work injury... if not corrected before appeal from final judgment.” Goldston, 326 N.C. at 726, 392 S.E.2d at 736. A “substantial right” is “ ‘a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [litigant] is entitled to have preserved and protected by law: a material right.’ ” Oestreicher, 290 N.C. at 130, 225 S.E.2d at 805 (quoting Webster’s Third New International Dictionary 2280 (1971)). “Whether an interlocutory ruling affects a substantial right requires consideration of ‘the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.’” N. C. Dep’t. of Transp. v. Rowe, 351 N.C. 172, 175, 521 S.E.2d 707, 709 (1999) (quoting Waters, 294 N.C. at 208, 240 S.E.2d at 343)).
In the decretal paragraphs contained in its order, the trial court stated, in pertinent part, that:
2. That Plaintiffs’ Motion for Preliminary Injunction should be and hereby is GRANTED, and that Defendant Ed Brown, Sheriff of Onslow County is hereby:
a. Restrained and enjoinedfrom using [N.C. Gen. Stat. §§] 14-292, 14-293, 14-301, 14-306.1A, and 14-306.4 to prohibit the Plaintiffs from displaying, selling, operating or promoting the Gift Surplus System v1-01.1[] and the Gift Surplus computer kiosk and sweepstakes promotion of the www.giftsurnlus.com website and gift cards; and
b. Restrained and enjoined from compelling or attempting to compel, coerce or persuade the Plaintiffs to remove the Gift Surplus System v1-01.1 and the Gift Surplus computer kiosks and equipment associated with the kiosks and sweepstakes from any retail establishment in Onslow County; and
c. Restrained and enjoined from citing or prosecuting the Plaintiffs for criminal *360 administrative offenses or violations by reason of such party’s display, sale, operation, or promotion of the Gift Surplus System v1-01.1 and the Gift Surplus computer kiosks and sweepstakes promotions of the www.gift-surplus.com website and gift cards in Onslow County.
3. The Preliminary Injunction set out in [Paragraph No. 2] above'is specifically enforceable only in those Onslow County places which are validly operating four or less Gift Surplus System v1-01.1/Gift Surplus computer kiosks at one location or on one site.
In other words, the clear import of the preliminary injunction provisions contained in the trial court’s order was to prevent Defendant and his agents from taking any steps to enforce the provisions of N.C. Gen. Stat. §§ 14-292, 14-293, 14-301, 14-306.1A, and 14-306.4 against the display, sale, operation, promotion of the equipment, computer programs, and websites in sites located in Onslow County at which no more than four kiosks were present. As a result, every provision of the preliminary injunction had the effect of prohibiting Defendant from enforcing certain statutory provisions as he understood them against Plaintiffs’ equipment and activities as the activities in question occurred at locations in Onslow County at which no more than four kiosks were present.
As I read the relevant decisions, this Court has recognized that the entry of a preliminary injunction precluding a state or local agency from enforcing the law affects a substantial right and is immediately appeal-able. Rockford-Cohen Group, LLC v. N.C. Dep’t. of Ins., _ N.C. App. _, _, 749 S.E.2d 469, 471 (2013) (stating that, “[w]hen an agency of the State that is charged with enforcing statutes chooses to appeal rulings limiting the enforcement of those statutes, the right to enforce the statute is substantial, and the rulings are immediately appealable”) (citing Johnston v. State, _ N.C. App. _, _, 735 S.E.2d 859, 864 (2012) (allowing an immediate appeal from an interlocutory order declaring that a statute, as applied to the plaintiff, was unconstitutional since that decision had the effect of permanently “enjoin[ing] the State from prosecuting plaintiff for violations of the” relevant statutory provisions), disc. review concerning additional issues denied, 366 N.C. 562, 738 S.E.2d 360 (2013), appeal dismissed, 366 N.C. 562, 738 S.E.2d 361 (2013), aff’d, _ N.C. App. _, 749 S.E.2d 278 (2013), and Gilbert v. N.C. State Bar, 363 N.C. 70, 76-77, 678 S.E.2d 602, 606 (2009) (allowing an immediate appeal from an interlocutory order that “enjoin[ed] defendant from *361 prosecuting” a related proceeding); see also Beason v. N.C. Dep’t. of Sec’y. of State, _ N.C. App. _, _, 743 S.E.2d 41, 44-45 (2013) (stating that, “since respondent is charged with investigating violations of and enforcing” certain provisions of the lobbying laws, since “respondent’s right to cariy out these duties is substantial,” and since “respondent’s ability to carry out its duties requires that it be able to act timely on allegations it believes constitute violations,” the respondent’s appeal from an interlocutory order enjoining the enforcement of those lobbying laws against the petitioner was subject to immediate appellate review). I find no basis for departing from this well-established line of precedent, as the Court’s opinion appears to do, in this case. As a result, given that the preliminary injunction issued by the trial court prohibits Defendants from taking action to enforce the relevant gaming machine statutes as he understands them, I would hold that this Court has jurisdiction over Defendant’s appeal from the issuance of the preliminary injunction and proceed to address the validity of Defendant’s challenge to that portion of the trial court’s order on the merits.
In its opinion, the Court concludes that a portion of the trial court’s preliminary injunction affects a substantial right and should be invalidated and that a portion does not affect a substantial right and should remain undisturbed. More specifically, the Court concludes that the sixth conclusion of law contained in the trial court’s order should be vacated and that “validly” should be stricken from the third decretal paragraph on the grounds that these portions “go beyond maintaining the status quo.” In reaching this conclusion, the Court relies on the Supreme Court’s statement in A.E.P. Indus., Inc. v. McClure, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983) (citation and quotation marks omitted), to the effect that “[t]he purpose of a preliminary injunction is ordinarily to preserve the status quo pending trial on the merits” and concludes that, because the relevant portions of the preliminary injunction order do more than serve the purpose of maintaining the status quo, they “affect Sheriff Brown’s substantial right to enforce the laws of North Carolina” and should be invalidated on appeal. On the other hand, the Court appears to hold that the remainder of the preliminary injunction is so limited in scope and effect that it does not affect a substantial right and is not subject to immediate appellate review. I do not believe that the Court’s approach to the resolution of this issue has any support in our “substantial right” jurisprudence as explained in decisions such as Gilbert, Johnston, and Beason.
As an initial matter, the Court’s analysis seems to indicate that the extent to which Defendant was entitled to appeal from the issuance of *362 the preliminary injunction hinges upon the validity of the injunction itself.[1] In other words, the Court seems to conclude that Defendant is entitled to immediate appellate review of the preliminary injunction to the extent, and only to the extent, that the trial court exceeded its authority in issuing the injunction in the first place. I see no basis in our “substantial right” jurisprudence for equating a litigant’s ability to appeal from an interlocutory order with the litigant’s ability to prevail on the merits in the event that such an appeal was to be entertained. Instead, the extent to which this Court has jurisdiction to entertain an immediate appeal from an interlocutory order and the extent to which the trial court erred by entering the interlocutory order in question constitute two completely different issues that have little or no relation to each other in the preliminary injunction context.
Secondly, the Court’s appealability analysis appears to hinge on the assumption that we have jurisdiction over Defendant’s appeal from the trial court’s order to the extent, and only to the extent, that the trial court’s order disturbed the status quo. More specifically, the Court states that the portion of the preliminary injunction that it does not believe to be subject to appellate review on an interlocutory basis “does not implicate a substantial right in enforcing the statutes and simply maintained the status quo pending a trial on the merits.” Aside from the fact that the extent to which a particular order maintains or disturbs the status quo is not the sum total of the test employed for evaluating the merits of a trial court’s decision to issue a preliminary injunction, I am unable to find any support in our “substantial right” jurisprudence for the use of such a standard. Simply put, I am not aware of any decision that finds or declines to find the existence of a “substantial right” sufficient to support the maintenance of an appeal from an interlocutoiy order based upon the extent to which the underlying order preserves or disturbs the status quo. For that reason, I do not believe that the Court’s reference to the impact of the underlying preliminary injunction on the status quo has any bearing on Defendant’s right to immediate appellate review of the preliminary injunction.
*363 Finally, the Court appears to conclude that Gilbert, Johnston, and Beason only authorize interlocutory appeals from orders that permanently, rather than preliminarily, enjoin state or local agencies or officials from enforcing the law against specific litigants.[2] However, the Court’s interpretation of these cases is inconsistent with our statement of the applicable legal principle in Rockford-Gohen, a case that involved a challenge to the issuance of a preliminary injunction; has no support in their underlying logic, which assumes that an order precluding a state or local official from enforcing the law affects a substantial right without in any way suggesting the existence of a temporal limitation on the applicability of that principle; and ultimately rests upon stray references to the permanence of the injunctions at issue in those cases that had no apparent impact upon the reasoning actually employed in holding that the orders challenged in those case were immediately appealable.[3] As a result, since the preliminary injunction at issue in this case prohibits a state or local official from enforcing the law against Plaintiffs, since *364 our decisions clearly allow immediate appellate review of such orders, and since the logic upon which the Court relies in reaching a different conclusion rests upon a misapprehension of our prior decisions concerning appealability issues, I would hold that this Court has jurisdiction over the entirety of Defendant’s challenge to the preliminary injunction and will now, in light of that conclusion, address Defendant’s challenge to the issuance of the preliminary injunction on the merits.
Validity of the Preliminary Injunction
“[A preliminary injunction] will be issued only (1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff’s rights during the course of litigation.” Ridge Cmty. Investors, Inc. v. Berry, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). “[O]n appeal from an order of superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself.” A.E.P. Indus., 308 N.C. at 402, 302 at 754, 760 (citation omitted). Although appellate courts review orders granting or denying preliminary injunctions using a de novo standard of review, we have also noted that “a trial court’s ruling on a motion for a preliminary injunction is presumed to be correct, and the party challenging the ruling bears the burden of showing it was erroneous.” Analog Devices, Inc. v. Michalski, 157 N.C. App. 462, 465, 579 S.E.2d 449, 452 (2003) (citation omitted). For purposes of this case, the ultimate issue raised by Defendant’s challenge to the validity of the preliminary injunction is whether Plaintiffs have shown a likelihood of success on the merits and whether they are likely to sustain an irreparable injury in the event that they are deprived of injunctive relief prior to the completion of a trial on the merits.[4]
According to N.C. Gen. Stat. § 14-306.4(b), “it shall be unlawful for any person to operate, or place into operation, an electronic machine or device to... [c]onduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize.” An “electronic machine or device” for purposes of N.C. Gen. Stat. § 14-306.4(b) is a piece of equipment “that is intended to be used by a sweepstakes entrant, that uses energy, and that is capable of displaying information *365 on a screen or other mechanism.” N.C. Gen. Stat. § 14-306.4(a)(l). Similarly, an “entertaining display” is defined as “visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play,” including “[a] video game based on or involving the random or chance matching of different pictures, words, numbers, or symbols not dependent on the skill or dexterity of the player” and “[a]ny . . . video game not dependent on skill or dexterity that is played while revealing a prize as the result of an entry into a sweepstakes.” N.C. Gen. Stat. § 14-306.4(a)(3). Finally, a “sweepstakes” is defined as “any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance.” N.C. Gen. Stat. § 14-306.4(a) (5). As a result, given that the equipment and activities protected by the preliminary injunction clearly involve the use of electronic devices to engage in or simulate game play based upon which a participant may win or become eligible to win a prize, the only basis upon which Plaintiffs’ equipment and activities can avoid running afoul of N.C. Gen. Stat. § 14-306.4(b) is in the event that the game or simulated game involved is “dependent on skill or dexterity.”
In its order, the trial court found as a fact that:
19. Nick Farley... testified on behalf of the Plaintiffs. He was proffered and accepted as an expert witness in the field of gaming and software.[5]
20. Prior to trial, Farley conducted a review and examination of the computer software program, Gift Surplus System v1-01-1, developed by Gift Surplus, as well as the Gift Surplus computer kiosk, which resulted in a written report dated April 16, 2013 (a copy of which was received into evidence).
*366 21. In Farley’s uncontroverted opinion as evidenced by his report and testimony, the computer software program that operates the distribution of Gift Surplus sweepstakes entries and the video games used to reveal 'winning sweepstakes entries on the Gift Surplus Kiosk is a sweepstakes which operates in compliance with the generally accepted guidelines for operating sweepstakes in North Carolina and many other jurisdictions in the United States.
22. Farley testified that, based on his expertise honed through years of experience and his thorough knowledge of the gaming machines and software, he understands the meaning and interpretation of the words “skül” and “dexterity” as used by the industry in North Carolina and many other jurisdictions.[6]
23. In Farley’s uncontroverted opinion as evidenced by his report and testimony, the Gift Surplus System vl-01-1, developed by Gift Surplus and used in the kiosk (Plaintiff’s Exhibit 1) is dependent on skill or dexterity in order to realize any prize or entitlement from the sweepstakes entries.[7]
Based upon these and other findings, the trial court concluded as a matter of law that:
6. The Gift Surplus System vl-01-1 and the Gift Surplus computer kiosk promote the sale of products through a lawful sweepstakes under North Carolina law.
*367 8. There is a likelihood that the Plaintiffs will prevail in that:
a. Gift Surplus System v1-01.1 and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, conduct a valid sweepstakes within the applicable law.
b. The Gift Surplus System v1-01.1 and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, in promotion of their sweepstakes are dependent on skill or dexterity as required under North Carolina statutory law.
c. The Gift Surplus System v1-01.1 and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, is a lawful promotional device for the sale of gift certificates and operation of their promotional sweepstakes.
As a result, the trial court determined that Defendant should be enjoined from taking any action against Plaintiffs’ equipment and activities based upon a determination that the extent to which a person received a prize for participating in the sweepstakes hinged upon that person’s skill or dexterity.
The trial court’s conclusion that Plaintiffs’ equipment and activities involved a game whose outcome depended on skill or dexterity rested upon acceptance of Mr. Farley’s testimony to the effect that the outcome of the games played utilizing Plaintiffs’ equipment depended on the player’s skill or dexterity. Although the term “skill or dexterity” as used in N.C. Gen. Stat. § 14-306.4 has not been statutorily defined, the meaning of the term in question, as used in Article 37 of Chapter 14 of the General Statues, a set of provisions governing gambling-related activities that includes N.C. Gen. Stat. § 14-306.4, has been addressed by this Court. In light of that fact, the trial court should have determined whether Plaintiffs’ equipment and activities facilitated a game of “skill and dexterity” or a game of chance based upon the meaning of that term as used in North Carolina gambling-related cases rather than on the basis of the meaning of that term as used in other jurisdictions and in the gaming industry, which is the approach that the trial court found to have been adopted in Mr. Farley’s testimony. Thus, in order to determine whether the trial court correctly found that Plaintiffs’ equipment and *368 activities were lawful, we must first ascertain the difference between a game of skill and a game of chance as those terms are used in our gambling statutes and then determine which side of the resulting line Plaintiffs’ equipment and activities fall on.
In Collins Coin Music Co. of North Carolina, Inc. v. North Carolina Alcoholic Beverage Control Comm’n, 117 N.C. App. 405, 408, 451 S.E.2d 306, 308 (1994), disc. rev. denied, 340 N.C. 110, 456 S.E.2d 312 (1995), we stated that:
A game of chance is “such a game as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance.” State v. Eisen, 16 N.C. App. 532, 535, 192 S.E.2d 613, 615 (1972) (citation omitted). “A game of skill, on the other hand, is one in which nothing is left to chance,- but superior knowledge and attention, or superior strength, agility and practice gain the victory.” Id. at 535, 192 S.E.2d at 615-16 (citation omitted). In State v. Stroupe, 238 N.C. 34, 76 S.E.2d 313 (1953), a case involving the legality of the game of pool, our Supreme Court stated:
It would seem that the test of the character of any kind of a game of pool as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each particular kind of game. Or to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment.
Id. at 38, 76 S.E.2d at 316-317.
In fight of this understanding of the meaning of the relevant statutory language, this Court considered whether a video poker game was one of skill or of chance, id. at 406, 451 S.E.2d at 307, and determined that the game in question was one of chance rather than one of skill because, at least in part, almost all of the skill-related elements in an in-person poker game, including the use of psychological factors such as bluffing to prevail over an opponent, were absent from video poker. Id. at 408, 451 S.E.2d at 308. In addition, we stated that:
although a player’s knowledge of statistical probabilities can maximize his winnings in the short term, he cannot *369 determine or influence the result since the cards are drawn at random. In the long run, the video game’s program, which allows only a predetermined number of winning hands, negates even this limited skill element.
Id. at 409, 451 S.E.2d at 308 (internal citation omitted). As a result, the essential difference between a game of skill and a game of chance for purposes of our gambling statutes, including N.C. Gen. Stat. § 14-306.4, is whether' skill or chance determines the final outcome and whether chance can override or thwart the exercise of skill.
As was the case with the video poker game at issue in Collins Coin Music, the machines and equipment at issue here only permitted a predetermined number of winners. For that reason, a player who plays after the predetermined number of winners has been reached will be unable to win a prize no matter how much skill or dexterity he or she exhibits.[8] In addition, use of the equipment at issue here will result in the playing of certain games in which the player will be unable to win anything of value regardless of the skill or dexterity that he or she displays.[9] Finally, the extent to which the opportunity arises for the “nudging” activity upon which the trial court’s order relies in support of its determination that the equipment in question facilitated a game of “skill or dexterity” appears to be purely chance-based. Although Mr. Farley persuaded the trial court that the outcome of the games facilitated by Plaintiffs’ equipment and activities depended on skill or dexterity, the only basis for this assertion was the player’s ability to affect the outcome by “nudging” a third symbol in one direction or the other after two matching symbols appeared at random on the screen. Assuming for purposes of argument that this “nudging” process does involve skill or dexterity, I am unable to see how this isolated opportunity for such considerations to affect the outcome overrides the impact of the other features which, according to the undisputed evidence, affect and significantly limit the impact of the player’s skill and dexterity on the outcome. In light of these inherent limitations on a player’s ability to win based upon a display of skill and dexterity, an individual playing the machines and utilizing the equipment *370 at issue simply does not appear to be able to “determine or influence the result over the long haul.” Id. at 409, 451 S.E.2d at 309 (citation omitted). As a result, for all of these reasons, I am compelled by the undisputed evidence to “conclude that the element of chance dominates the element of skill in the operation” of Plaintiffs’ machines, id., a fact that demonstrates that Plaintiff is not likely to succeed on the merits at trial and that the trial court erred by preliminarily enjoining Defendant from enforcing the strictures of N.C. Gen. Stat. § 14-304.6(b) against Plaintiffs. Thus, I believe that the trial court’s order should be reversed to the extent that it preliminarily enjoins Defendant from enforcing the provisions of N.C. Gen. Stat. § 14-306.4 against Plaintiffs.[10]
Conclusion
Thus, while I agree with my colleagues that we have jurisdiction over Defendant’s challenge to the denial of his dismissal motion and that the trial court properly rejected Defendant’s governmental immunity and justiciability challenges to Plaintiffs’ complaint, I am unable to agree with their decision that only a portion of the trial court’s preliminary injunction order is subject to immediate appellate review and would further conclude, after examining the merits of Defendant’s challenge to the preliminary injunction, that, since Plaintiffs did not demonstrate a likelihood of success on the merits at trial, that portion of the trial court’s order preliminarily enjoining Defendant from enforcing various statutory provisions against Plaintiffs should be reversed. As a result, I would affirm the trial court’s refusal to dismiss Plaintiffs’ complaint, reverse the trial court’s decision to issue a preliminary injunction against Defendant, and remand this case to the Onslow County Superior Court for further proceedings not inconsistent with this opinion and dissent from the Court’s decision to the extent that it reaches a contrary result.

. This aspect of the Court’s analysis is similar to the argument advanced in Plaintiff Sandhill Amusements’ brief, which suggests that the preliminary injunction does not affect a substantial right on the theory that, since Plaintiffs’ equipment and activities do not violate the applicable gambling statutes, Defendant has not been enjoined from properly enforcing the law. However, as is discussed in more detail in the text, the extent to which the substance of a party’s position on the merits is correct and the extent to which that party has a right to seek immediate appellate review from an interlocutory order are two separate, and essentially unrelated, questions.

. As we have already noted, the Court suggests that the fact that the preliminary injunction merely affects Defendant’s ability to enforce a limited number of statutory provisions against a limited number of persons in a limited geographic area militates in favor of a finding that a portion of the preliminary injunction does not affect a substantial right and appears to read Gilbert as distinguishing between injunctions that affect a defendant’s ability to enforce the laws generally and injunctions that affect a defendant’s ability to enforce the laws against specific litigants. A similar argument resting on the scope of the preliminary injunction is advanced in the briefs submitted by Plaintiff Gift Surplus and Plaintiff Sandhill Amusements. However, since the orders at issue in Gilbert, Beason, and Johnston all precluded the relevant agency or official from enforcing specific statutory provisions against specific litigants in specific contexts, it is clear that such scope-related arguments have no support in our “substantial right” jurisprudence and that the Court’s emphasis upon these factors in declining to review a portion of the preliminary injunction rests upon our misapprehension of our “substantial right” jurisprudence.

. To be sure, Gilbert notes that the order from which the defendant appealed permanently eiyoined it from prosecuting a separate proceeding. Id. at 75, 678 S.E.2d at 605. Similarly, the orders at issue in Beason, _ N.C. App. at _, 743 S.E.2d at 44-45, and Johnston, _ N.C. App. at _, 735 S.E.2d at 864, involve permanent orders rather than preliminary injunctions. However, nothing in the opinions in question in any way suggests that the fact that the injunctions or orders at issue in those cases were permanent rather than preliminary had any bearing on the Court’s appealability analysis. Instead, the Court simply held that an injunction or order that precluded a state or local official from enforcing the laws affected a substantial right and was immediately appealable without in any way suggesting that a different principle would apply to preliminary, as compared to permanent, injunctions or orders. As a result, while the Court has correctly identified a factual distinction between the relevant cases and this case, the logic upon which the Court based those decisions applies equally to permanent and preliminary injunctions or orders and nothing in the opinions in those cases in any way suggests that the outcome would have been different in the event that the bar to further enforcement had been preliminary rather than permanent in nature.

. In view of the fact that Defendant has not argued that Plaintiffs have shown the existence of the necessary irreparable injury, we will focus our discussion in the text on the extent to which Plaintiffs have shown that they are likely to succeed on the merits at trial.

. At this point, the trial court stated in Footnote No. 5 to its order that: “Nick Farley is the owner of Nick Farley & Associates, Inc., d/b/a Eclipse Compliance Testing, based in Salon, Ohio. This is one of three firms in the country that provides technical consulting services for compliance of gaming machines with state and federal regulations. Eclipse Compliance Testing consults with and has been hired by law enforcement, tribal and government regulatory agencies in 245 jurisdictions, as well as by regulated device manufacturers, regarding device classification and regulatory compliance. The firm has been involved solely in the business of compliance and testing from 2000 to present. Mr. Farley has testified as an expert witness in these matters in federal, state and tribal courts both as a witness for the government and for the defense.”

. At this point, in Footnote No. 6 to its order, the trial court stated that: “In preparation for his testimony, Nick Farley was provided by counsel the definition of ‘skill or dexterity’ in statutes in the United States. As noted in his testimony, Farley’s testimony was based partially upon the statutory definitions used around the country.”

. At this point, in Footnote No. 7 to its order, the trial court stated that: “Farley’s report found that a participant’s decision can be viewed as a strategic choice or tactic which will evolve into confidence with practice and experience. Participants familiar with revealing sweepstakes entries through the game theme will develop an aptitude or ability to quickly recognize the correct reel and the correct skill moves to reveal a prize winning sweepstakes entry. Experienced participants will demonstrate fluency in the execution of the learned past of recognizing and selecting the correct reel and making the correct skill move to reveal a potential winning outcome. Further, if the participant taires no action to effectuate the outcome of the game, the participant will not be able to realize any potential prize associated with the sweepstakes entry because these systems will never display a winning sequence on the first sweepstakes entry presented. Therefore, the kiosk games, per Farley, are dependent on skill or dexterity and not the element of chance.”

. As Mr. Farley indicated, “[s]hould the random distribution of entries cause the payout rate to exceed a predetermined limit, prizes selected for distribution which exceed $200 will be returned to the pool and another prize will be selected to be revealed.”

. Mr. Farley admitted on cross-examination that a number of screens will offer a “zero value prize” so that the participant cannot win anything of value regardless of his or her actions in the game and that “[w]hich entry is going to come out of the pool is determined by chance.”

. As a result of the fact that our resolution of the “skill or dexterity” issue for purposes of N.C. Gen. Stat. § 14-306.4 applies equally to the other statutes that Defendant was enjoined from enforcing against Plaintiffs, we need not separately analyze the validity of the preliminary injunction under these additional statutory provisions.