STATE OF NORTH CAROLINA v. MORTIMER RAYMAND EISEN

No. 721SC684

(Filed 22 November 1972)

1. Criminal Law § 114— jury charge — expression of opinion

When considered as a whole, the charge of the trial court in an action for gambling and establishing, using and keeping a blackjack table did not contain an unlawful expression of opinion. G.S. 1-180.

2. Gambling § 4— blackjack — element of chance dominant

In the game of blackjack, the element of chance clearly dominates the element of skill; therefore, the trial court did not err in refusing to rule as a matter of law that the game of blackjack is a game of skill.

3. Criminal Law § 51— failure to find witness blackjack expert — no error

The trial court did not abuse its discretion in refusing to find defendant's witness an expert in the fields of blackjack and mathematics.

4. Criminal Law § 50; Gambling § 4— expert testimony — blackjack as game of skill — exclusion proper

The trial court properly excluded testimony by defendant's witness regarding his opinion that blackjack was a game of skill since the question of whether blackjack was a game of chance or of skill was one for the jury to decide from the evidence and not one for a witness who by extensive study and experience had evidently made a career of the game.

APPEAL by defendant from *Copeland, Judge,* 15 May 1972 Session DARE Superior Court.

By indictment proper in form defendant was charged with (1) gambling and (2) establishing, using and keeping a gaming table, to wit, a table marked and used for playing the game of blackjack, a game of chance, together with implements and devices used in playing said game. Defendant was first charged

with said offenses in district court, was convicted, and appealed to superior court where the solicitor elected to proceed on a bill of indictment.

Principal evidence for the State was provided by three agents of the State Bureau of Investigation. Their testimony pertinent to this appeal is summarized as follows:

On or about 23 October 1971 Agents Dowdy and Cross went to the Beachcomber Lounge at Nags Head, arriving there at approximately 9:15 p.m. They entered the front door which was open and into a small foyer area in which was a cigarette machine, a guest register stand and a cash register. They then observed (evidently in an adjoining room) a Miss Greenberg dealing cards at a half-moon table with five persons sitting around the table on stools. Those sitting at the table were playing blackjack. Cross entered the game by purchasing twenty $1.00 chips and four $5.00 chips; Cross proceeded to play for some thirty or forty minutes. Defendant was in the lounge supplying the chips to the players as they bought them; defendant also assisted Miss Greenberg remove the chips if she won or pay the players if they won. Dowdy gave $20.00 to Miss Greenberg, she handed it to defendant who put the money in a slot in the table and supplied Dowdy with twenty white chips. Dowdy played the game and lost his chips in about forty-five minutes; he did win an occasional hand. Miss Greenberg left the table and defendant dealt the cards for awhile. The agents were dressed in sport clothes and Dowdy drank two beers while he was in the lounge. Cross stopped playing for awhile but later reentered the game; when he finally stopped playing, he requested defendant to cash his remaining five chips which defendant did by paying Cross $5.00. At approximately 11:25 p.m. Dare County officers entered the lounge and stopped the game.

The only witness presented by defendant was one Alan Davis whose pertinent testimony is briefly summarized as follows: He is a computer programmer employed with a firm in Westchester, New York, and his job is to translate an idea or mathematical formula into language a computer can understand. As part of his work toward obtaining a Masters Degree, he is compiling a thesis on the game of blackjack. He has devoted over 500 hours to this thesis, gathering extensive material on the game of blackjack. He has played the game in many casinos

in several states and foreign countries. He attempted to show in some detail that in the game of blackjack skill and not chance is the dominating element.

A jury found defendant guilty as charged and from judgment imposing two one year prison sentences, defendant appealed.

*Attorney General Robert Morgan by Roy A. Giles, Jr., Assistant Attorney General, for the State.*

*Twiford & Abbott by Christopher L. Seawell and Wallace W. Dixon for defendant appellant.*

BRITT, Judge.

[1] Defendant's first contention is that the trial court in its charge to the jury expressed an opinion on the evidence in violation of G.S. 1-180.

In designating the specific portion of the charge in which he contends the court expressed an opinion, the defendant attempts to take segregated portions of a long sentence and combine those portions into a sentence which he contends was prejudicial. We find no merit in the contention. It is a well established principle of law in this State that the charge of the court will be construed contextually, and segregated portions will not be held prejudicial error when the charge as a whole is free from any prejudice to defendant. *State v. Richards, et al*, 15 N.C. App. 163, 189 S.E. 2d 577 (1972), and cases therein cited. We have carefully reviewed the jury charge, with particular reference to the portion complained of, but conclude that the court did not express an opinion.

Defendant's next contention is that the court committed error in not holding as a matter of law that the game of blackjack is a game of skill.

The game of blackjack was described in the evidence as follows: The dealer and all players get one card face down and one card face up. Picture cards have a count of ten and an ace at the election of the player may have a count of one or eleven. The object is to beat the dealer by getting closer to the number 21 than the dealer without exceeding that number. Cards may be drawn by the players and the dealer. Neither the dealer nor the players can anticipate which card will be received when they are dealt an additional card.

Decisions of our Supreme Court on the subject of gambling date back many years. In *State v. Gupton,* 30 N.C. 271, 273-274 (1848), the court held that the game of tenpins is not a game of chance. In discussing what is and what is not a game of chance, Chief Justice Ruffin said: "Though our knowledge on such subjects is very limited, yet we believe that, in the popular mind, the universal acceptation of 'a game of chance' is such a game as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance. As intelligible examples, the games with dice, which are determined by throwing only, and those in which the throw of the dice regulates the play, *or the hand at cards depends upon a dealing with the face down,* exhibit the two classes of games of chance. A game of skill, on the other hand, is one in which nothing is left to chance, but superior knowledge and attention, or superior strength, agility and practice gain the victory." (Emphasis ours.)

In *State v. Taylor,* 111 N.C. 680, 681-682, 16 S.E. 168 (1892), Justice Avery speaking for the court said: "It is a matter of universal knowledge that no game played with the ordinary playing cards is unattended with risk, whatever may be the skill, experience or intelligence of the gamesters engaged in it. From the very nature of such games, where cards must be drawn by and dealt out to players, who cannot anticipate what ones may be received by each, the order in which they will be placed or the effect of a given play or mode of playing, there must be unavoidable uncertaintly (sic) as to the results."

In *State v. Stroupe,* 238 N.C. 34, 38, 76 S.E. 2d 313 (1953), a case involving the legality of a particular game of pool, Justice (later Chief Justice) Parker, speaking for the court said: "It would seem that the test of the character of any kind of a game of pool as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each particular kind of game. Or to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment."

[2] In the game of blackjack described above, we think the element of chance clearly dominates the element of skill; cer-

tainly, "the element of chance is present in such a manner as to thwart the exercise of skill or judgment." We hold that in the case at bar the court did not err in refusing to rule as a matter of law that the game of blackjack is a game of skill.

[3] Finally, defendant contends the trial court erred in not qualifying his witness Alan Davis as an expert in the fields of blackjack and mathematics and in not allowing Davis to testify as to the results of his tests and knowledge of the game of blackjack.

The record reveals that the court found Davis to be an expert in the field of computer science. It is well settled that the competency of a witness to testify as an expert in a particular matter at issue is addressed primarily to the discretion of the trial court, and its determination is ordinarily conclusive unless there be no evidence to support the finding or unless there is abuse of discretion *State v. Moore,* 245 N.C. 158, 95 S.E. 2d 548 (1956). We hold that the court did not abuse its discretion in not finding Davis to be an expert in the fields of blackjack and mathematics.

[4] As to the testimony proffered by Davis and disallowed by the court, we find it unnecessary to fully set forth the excluded evidence here. Davis was allowed to testify at length regarding his studies of and familiarity with the game of blackjack and how the game is played and how a player can improve his skill. The gist of the excluded testimony was that by extensive study and experience Davis had become an expert in the game of blackjack and considered it predominantly a game of skill. Examples of his excluded testimony are: "I believe that through study and practice we can make a person good enough to beat the game of blackjack. Some people take more time and practice and some people attain high skill. It varies with each person how much skill they can attain. * * * I consider it (blackjack) to be predominantly a game of skill. * * * The element of skill predominates the game of blackjack or 21."

We think the court properly excluded the testimony. Whether blackjack as described in the evidence was a game of chance or one of skill was a question for the jury to decide from the evidence and not a question for one who by extensive study and experience has evidently made a career of the game. If all

persons who played the game were as qualified as Davis, a different view might be justified, but, of course, that is not the case.

We hold that defendant received a fair trial free from prejudicial error and the sentences imposed were within the limits allowed by statute.

No error.

Chief Judge MALLARD and Judge BROCK concur.