COLLINS COIN MUSIC CO. OF NORTH CAROLINA, INC. AND NORTH CAROLINA AMUSEMENT MACHINES ASSOCIATION, INC. v. NORTH CAROLINA ALCO-HOLIC BEVERAGE CONTROL COMMISSION; WILLIAM PAUL POWELL, JR., CHAIRMAN OF THE NORTH CAROLINA ALCOHOLIC BEVERAGE CONTROL COMMISSION; NORTH CAROLINA DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY; JOSEPH W. DEAN, JR., SECRETARY OF NORTH CAROLINA DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY; AND HORACE M. KIMEL, JR., DISTRICT ATTORNEY FOR THE EIGHTEENTH JUDICIAL DISTRICT

No. 9318SC439

(Filed 20 December 1994)

**Gambling § 33 (NCI4th)— video card games—chance over dexterity—coupons in excess of $10—illegal slot machines**

Plaintiff's video card games were illegal slot machines not falling within the exception of N.C.G.S. § 14-306, since the operation of the games depended upon chance rather than a player's skill or dexterity, and a player could win from a single hand coupons worth more than ten dollars.

**Am Jur 2d, Gambling §§ 1-4.**

Appeal by plaintiffs from order entered 27 January 1993 by Judge William Z. Wood, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 7 February 1994.

On 16 September 1994, plaintiff filed a Petition for Rehearing this case which had resulted in an unpublished opinion filed 16 August 1994. On 14 November 1994, we allowed that petition but stipulated that the case would be reconsidered without the filing of additional briefs. The following opinion supersedes and replaces the unpublished opinion filed 16 August 1994.

On 14 November 1991, plaintiff Collins Coin Music Co. of North Carolina, Inc. ("Collins") brought this suit, seeking a declaratory judgment that video card games that they owned and operated were not illegal slot machines as defined by N.C. Gen. Stat. § 14-306 (1993). Plaintiff-intervenor North Carolina Amusement Machines Association, Inc. (the "Association"), a non-profit organization that is made up of distributors, suppliers, operators, and manufacturers of amusement machines, joined Collins in this action pursuant to Rule 24(b) of the North Carolina Rules of Civil Procedure. On 4 January 1993, defendants filed a motion for partial summary judgment. Ruling that the video card games were illegal slot machines, the trial court grant-

COLLINS COIN MUSIC CO. v. N.C. ALCOHOLIC BEVERAGE CONTROL COMM.

[117 N.C. App. 405 (1994)]

ed partial summary judgment for defendants on 27 February 1994. From this order, plaintiffs appeal.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III and Special Deputy Attorney General Robin P. Pendergraft, for the State.*

*Carruthers & Roth, P.A., by Richard L. Vanore and Kenneth L. Jones, for plaintiff-appellant.*

*Daughtry, Woodard, Lawrence & Starling, by N. Leo Daughtry, for plaintiff-intervenor-appellant.*

McCRODDEN, Judge.

Our task in reaching the merits of this case is to determine whether the trial court properly entered partial summary judgment based upon its decision that the video card games were illegal slot machines.

Summary judgment is an appropriate device "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact to be tried by the jury and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1 Rule 56(c) (1990). The party moving for summary judgment has the burden of showing the lack of any triable issue. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). The trial court must draw all inferences of fact from the evidence offered at the hearing against the movant and in favor of the party opposing the motion. *Id.*

Evidence presented at the summary judgment hearing, considered in the light most favorable to plaintiffs, tended to show that plaintiff Collins is engaged in the business of owning, installing, and maintaining video games, which include video poker games. The video poker machines, which are at issue in this litigation, operate as follows. The game is activated when a player inserts one or more quarters, or one or five dollar bills into the machine. For each quarter deposited, the player receives one credit. The microprocessor inside the computerized machine then randomly "deals" a video image of five playing cards out of a 52-card deck. The player may then discard as many as five cards and "choose" new cards through the "skill stop" function, which causes the game's microcomputer to flash cards in the positions of the discarded cards. The player may press a button to

IN THE COURT OF APPEALS                    407

COLLINS COIN MUSIC CO. v. N.C. ALCOHOLIC BEVERAGE CONTROL COMM.

[117 N.C. App. 405 (1994)]

stop the images and "choose" his card. A player can "win" a paper coupon with a number of specified credits that can be exchanged for merchandise or food and beverages.

---

Plaintiffs contend the video poker game is specifically exempt under N.C.G.S. § 14-306 as a game that "depends upon the skill or dexterity of the player," and aver that the game does not constitute a form of gambling but is a permitted form of entertainment.

Section 14-306 defines an illegal slot machine as:

Any machine, apparatus or device . . . that is adapted, or may be readily converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated in such a manner that the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value . . ., or the user may secure additional chances or rights to use such machine . . . .

N.C.G.S. § 14-306. Both plaintiffs and defendants agree that the video game at issue fits within this statutory definition of an illegal slot machine. Plaintiffs, however, contend that the game is expressly excepted from the statutory definition of an illegal slot machine, pursuant to another portion of section 14-306, which provides:

The definition [of an illegal slot machine] contained in the first paragraph of this section and G.S. 14-296, 14-301, 14-302 and 14-305 does not include coin-operated machines, video games, and devices designed and manufactured for amusement only, the operation of which depends upon the skill or dexterity of the player. Included within this exception are pinball machines, video games, and other mechanical amusement devices that enable the player, based on his skill or dexterity, to make varying scores or tallies and to receive free replays or paper coupons that may be exchanged for prizes with a value not exceeding Ten Dollars ($10.00), but may not be exchanged or converted to money.

N.C.G.S. § 14-306. To except their machine from the definition of an illegal slot machine, plaintiffs must show (1) that the video poker game was designed and manufactured for amusement only, (2) that a player's ability to make varying scores and receive coupons depends upon the skill or dexterity of the player, and (3) that the coupons a player may win are not worth more than ten dollars. The second and third requirements are dispositive.

COLLINS COIN MUSIC CO. v. N.C. ALCOHOLIC BEVERAGE CONTROL COMM.

[117 N.C. App. 405 (1994)]

I.

Plaintiffs assert that the operation of the video machines at issue here depends upon the skill or dexterity of the player, not upon chance. We disagree.

A game of chance is "such a game as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance." *State v. Eisen*, 16 N.C. App. 532, 535, 192 S.E.2d 613, 615 (1972) (citation omitted). "A game of skill, on the other hand, is one in which nothing is left to chance, but superior knowledge and attention, or superior strength, agility and practice gain the victory." *Id.* at 535, 192 S.E.2d at 615-16 (citation omitted). In *State v. Stroupe*, 238 N.C. 34, 76 S.E.2d 313 (1953), a case involving the legality of the game of pool, our Supreme Court stated:

It would seem that the test of the character of any kind of a game of pool as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each particular kind of game. Or to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment.

*Id.* at 38, 76 S.E.2d at 316-317.

The Supreme Court's test is particularly instructive here. At the summary judgment hearing in the instant case, plaintiffs presented affidavits of experts on mathematics and statistics to the effect that a knowledge of the law of probabilities can sway the outcome of the video game, and that the game's "skill stop" feature allows a player with good hand/eye coordination to fare better than a player whose coordination and dexterity is poor. Plaintiffs acknowledge, however, that except for knowledge of the law of probabilities, all of the skill elements associated with the ordinary game of draw poker are absent in the video version. The game of draw poker, played against other individuals, permits a player to use psychology, bluffing, and knowledge of the law of probabilities relative to the game of poker, to increase his potential win relative to the total number of games played. Psychology and bluffing have no effect on the final outcome of play when playing electronic video poker. *See U.S. v. 294 Various Gambling Devices*, 718 F.Supp. 1236, 1243 (W.D.Pa. 1989).

COLLINS COIN MUSIC CO. v. N.C. ALCOHOLIC BEVERAGE CONTROL COMM.

[117 N.C. App. 405 (1994)]

An additional and perhaps more important fact in our decision is that, although a player's knowledge of statistical probabilities can maximize his winnings in the short term, he cannot determine or influence the result since the cards are drawn at random. *See id.* In the long run, the video game's program, which allows only a predetermined number of winning hands, negates even this limited skill element. The machines have an internal record keeping system to track the number of games played and the number of points won, and allow only a set percentage of winning hands to be dealt. Therefore, over time even the astute player cannot defeat the retention ratio.

Considering the overall operation of the video game, it is clear that a player's knowledge of statistical probabilities can maximize his winnings in the short term, but that he cannot determine or influence the result over the long haul. *See 294 Various Gambling Devices*, 718 F.Supp. at 1243. Hence, we conclude that the element of chance dominates the element of skill in the operation of the video card game.

## II.

The evidence also shows that, for one game, a player of the video card game can win coupons which he can exchange for merchandise exceeding ten dollars in value, thus violating the third requirement for an excepted machine. Plaintiffs admit that if a sufficient amount of money is deposited into the machine, a player can use twenty credits in a single game. For each credit of play, the player can be awarded 100 credits of play, and each credit is worth twenty-five cents. If a player uses twenty credits, he may acquire 2,000 credits by keeping or discarding unwanted cards for the purpose of achieving winning combinations. He may then convert 2000 credits from a single hand into coupons which may be exchanged for $500.00 worth of merchandise.

Plaintiffs appear to believe that, because the paper coupons state that they may not be exchanged for prizes with a value exceeding ten dollars, they may award numerous coupons for a single hand and not be an illegal slot machine. It makes no difference whether a single hand of play awards a paper coupon for fifty dollars or ten coupons, each with a value of five dollars. Since a player can win $500.00 worth of prizes in a single hand, the video poker game in this case does not fall within the exception to the definition of illegal gambling.

In sum, we find that the operation of the video card game depends upon chance rather than a player's skill or dexterity and that

a player can win from a single hand coupons worth more than ten dollars. Consequently, plaintiff Collins' machines do not fall within the exception in section 14-306 and are illegal slot machines.

We affirm the trial court's order granting partial summary judgment for defendants.

Affirmed.

Chief Judge ARNOLD and Judge LEWIS concur.

Opinion written and concurred in prior to 16 December 1994.