IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1140

Filed: 15 October 2019

Onslow County, No. 13 CVS 3705

GIFT SURPLUS, LLC, and SANDHILL AMUSEMENTS, INC., Plaintiffs,

v.

STATE OF NORTH CAROLINA, ex rel. ROY COOPER, GOVERNOR, in his official capacity; BRANCH HEAD OF THE ALCOHOL LAW ENFORCEMENT BRANCH OF THE STATE BUREAU OF INVESTIGATION, MARK J. SENTER, in his official capacity; SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, ERIK A. HOOKS, in his official capacity; and DIRECTOR OF THE NORTH CAROLINA STATE BUREAU OF INVESTIGATION, BOB SCHURMEIER, in his official capacity, Defendants.

Appeal by Defendants from judgment entered 2 February 2018 by Judge Ebern T. Watson III in Onslow County Superior Court. Heard in the Court of Appeals 23 May 2019.

Fox Rothschild LLP, by Elizabeth Brooks Scherer, Kip David Nelson, and Troy D. Shelton; George B. Hyler, Jr.; and Grace, Tisdale, & Clifton, P.A., by Michael A. Grace, for plaintiffs-appellees.

Attorney General Joshua H. Stein, by Solicitor General Matthew W. Sawchak, Deputy Solicitor General James W. Doggett, and Assistant Solicitor General Kenzie M. Rakes, for defendants-appellants.

MURPHY, Judge.

Plaintiffs-Appellees Gift Surplus, LLC and Sandhill Amusements, Inc. ("Gift Surplus") sued the State, ex rel. Governor Roy Cooper, et al. ("the State") seeking a permanent injunction that would bar state law enforcement from enforcing State gambling and sweepstakes laws against the operators of Gift Surplus's sweepstakes

kiosks.  In a bench trial, the Superior Court concluded Gift Surplus's kiosks do not violate the State's prohibition of sweepstakes run through the use of an "electronic display" and permanently enjoined the State from enforcing these laws against Gift Surplus.  Because we conclude Gift Surplus's kiosks operate sweepstakes through an entertaining display in violation of N.C.G.S. § 14-306.4, we reverse and vacate the trial court's injunction.

## BACKGROUND

Gift Surplus has been embroiled in this legal battle with the State over its sweepstakes since 2013, when it sued the Sherriff of Onslow County seeking a declaration that its sweepstakes did not violate the State's gambling laws or its ban on video sweepstakes.  After the Onslow County Sherriff's Department seized kiosks loaded with Gift Surplus's sweepstakes games, Plaintiffs received a preliminary injunction barring law enforcement from enforcing state laws that the State contended prohibit the implementation and operation of the sweepstakes.  However, that preliminary injunction was overturned by our Supreme Court, which held Gift Surplus's sweepstakes violated N.C.G.S. § 14-306.4.  *Sandhill Amusements, Inc. v. Miller,* 368 N.C. 91, 773 S.E.2d 55 (2015) (adopting then-Judge Ervin's dissent in *Sandhill Amusements, Inc. v. Sheriff of Onslow Cnty.*, 236 N.C. App. 340, 762 S.E.2d 666 (2014)).

After the case had been sent back to the trial court, Gift Surplus made adjustments to its sweepstakes games, amended its *Complaint*, and again placed its games into operation around the State. One such adjustment is a "double nudge" feature that allows players to nudge the game reels as many as two times in order to move them into alignment and win a prize. Other additions included a "winner every time" feature that made 100% of spins winnable, albeit only for a prize of several cents on 75% of spins, and a "final ticket" feature that allowed prizes lost through incorrect nudging to be won back in later turns. Finally, Gift Surplus removed a "governor" feature that had prevented players from winning large prizes in quick succession.

At the second trial in this matter, in 2017, Gift Surplus sought and received a declaration that its sweepstakes do not violate the State's ban on video sweepstakes, codified in N.C.G.S. § 14-306.4. In its unchallenged Findings of Fact, the trial court found that Gift Surplus's kiosks run "video games[.]" These video games are used as a "promotional sweepstakes system" to reveal a potential prize to the playing customer. Based on its Findings of Fact, the trial court concluded: "[p]romotional sweepstakes are legal and lawful in North Carolina" so long as they comport with the applicable state and federal laws; "Plaintiff Gift Surplus'[s] proprietary sweepstakes system comports with all of the regulatory scheme of N.C.G.S. § 14-306.4[;]" and that Gift Surplus is "entitled to permanent injunctive relief, as requested in their . . .

Complaint." Having reached those conclusions, the trial court entered a permanent injunction barring the State and its agents from enforcing the criminal law prohibiting electronic sweepstakes against Gift Surplus. The State filed timely notice of appeal.

## ANALYSIS

Both arguments on appeal challenge the legal conclusions drawn from the trial court's factual findings and the trial court's order, judgment, and decree of a permanent injunction. The State's ultimate contention on appeal is that the trial court erred in permanently enjoining State law enforcement from enforcing the State's ban on certain electronic sweepstakes against "persons who operate or place into operation any equipment associated with . . . Gift Surplus'[s] sweepstakes system[.]" The State argues the trial court erred in granting Gift Surplus a permanent injunction because Gift Surplus's sweepstakes violate (1) the State's ban on video sweepstakes and, in the alternative, (2) the State's separate ban on gambling operations. We agree that Gift Surplus's sweepstakes do not comply with the State's prohibition of certain video sweepstakes and, as a result, need not reach the second argument on appeal.

The State argues "Gift Surplus's sweepstakes violate section 14-306.4 of the General Statutes." In contrast, the trial court concluded "Gift Surplus'[s] proprietary sweepstakes system comports with all of the regulatory scheme of N.C.G.S. § 14-

306.4." "Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011). After careful review, we hold Gift Surplus's sweepstakes system does not comport with N.C.G.S. § 14-306.4.

In relevant part, N.C.G.S. § 14-306.4 states, "[I]t shall be unlawful for any person to operate, or place into operation, an electronic machine or device to . . . [c]onduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize." N.C.G.S. § 14-306.4(b), (b)(1) (2017). A sweepstakes is "any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance." *Id.* at (a)(5). An entertaining display is "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play, such as, *by way of illustration* and not exclusion: [video poker, video bingo, video lotto games, video games of chance, etc.]" *Id.* at (a)(3) (emphasis added). There is no dispute that Gift Surplus's game is a sweepstakes. At issue is whether Gift Surplus's sweepstakes are conducted through "an entertaining display" in violation of N.C.G.S. § 14-306.4.

Both in their briefs and in oral argument the parties to this appeal focused on the issue of whether chance or skill predominates in the current iteration of Gift Surplus's sweepstakes. This is likely because our sweepstakes statute explicitly use

games of chance as an illustration of an improper electronic display and also because the distinction between games of chance and games of skill has received considerable attention from our appellate courts. *See, e.g.,* N.C.G.S. § 14-306.4(a)(3); *Sandhill Amusements, Inc. v. Miller,* 368 N.C. 91, 773 S.E.2d 55 (2015); *State v. Gupton*, 30 N.C. 271 (1848); *Crazie Overstock Promotions, LLC, v. State*, 830 S.E.2d 871 (N.C. Ct. App. 2019). However, we need not decide whether these sweepstakes are chance or skill-based in order to hold that they violate N.C.G.S. § 14-306.4.

The sweepstakes statute explicitly proscribes sweepstakes conducted through electronic display, which is "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play[.]" N.C.G.S. § 14-306.4(a)(3). From there, the statute goes on to set out "by way of illustration and not exclusion" a non-exhaustive list of specific games that fit the definition of "electronic display."[1] Gift Surplus mischaracterizes this statutory scheme in arguing a sweepstakes game "falls within the 'entertaining display' prohibition *only* when the 'video game is not dependent on skill or dexterity while revealing a prize as the result of an entry into a sweepstakes.'" Regardless of whether it is dependent on skill or dexterity, a sweepstakes falls within the entertaining

---

[1] The list of illustrative examples includes a number of games, such as: video bingo, poker, craps, keno, "video game[s] based on or involving the random or chance matching of different pictures, words, numbers, or symbols not dependent on the skill or dexterity of the player[,]" and "other video game[s] not dependent on skill or dexterity that [are] played while revealing a prize as the result of an entry into a sweepstakes." N.C.G.S. § 14-306.4(a)(3).

display prohibition simply if it is "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play[.]" N.C.G.S. § 14-306.4(a)(3).

The sweepstakes in question are run through standalone kiosks that display a video game resembling a reel-spinning slot machine. These kiosks undisputedly display visual information capable of being seen by a sweepstakes entrant. At trial, one of Gift Surplus's expert witnesses went as far as to testify that an individual with "a visual disability" would not be able to win the video game. This is because doing so requires the participant to be able to see the visual information displayed by the kiosks. Furthermore, this visual information takes the form of game play—the entrant's spinning and nudging of virtual reels. Gift Surplus's sweepstakes are run through the use of an "entertaining display." As such, regardless of whether skill or chance predominates over the games at issue, Gift Surplus's kiosks violate N.C.G.S. § 14-306.4 and the trial court's conclusion to the contrary must be reversed.

Having reversed the trial court's conclusion that Gift Surplus's sweepstakes do not violate N.C.G.S. § 14-306.4, we vacate the permanent injunction against the State and its "officers, agents, servants, and employees, and any person in active concert or participation with any of the Defendants or any of their officers, agents, servants, and employees[.]" As a result, we need not reach the State's argument that the sweepstakes are also illegal independent of the video sweepstakes statute because

they violate the separate ban on gambling operations codified in N.C.G.S. § 14-292. The trial court did not make specific findings or conclusions regarding the gambling operations statute; the permanent injunction was entirely based upon the sweepstakes' compliance with N.C.G.S. § 14-306.4.

## **CONCLUSION**

The trial court erred in concluding Gift Surplus's sweepstakes do not violate N.C.G.S. § 14-306.4 because the sweepstakes in question are run through the use of an entertaining display. We reverse the trial court's order and vacate its permanent injunction.

REVERSED AND VACATED.

Judge COLLINS concurs with a separate opinion.

Judge BRYANT concurs in the result with a separate opinion.

No. COA18-1140 – *Gift Surplus, LLC, et al. v. State, et al.*

COLLINS, Judge, concurring.

I concur in the majority opinion and agree that, according to the plain language of N.C. Gen. Stat. § 14-306.4, a sweepstakes is conducted through the use of an entertaining display in violation of N.C. Gen. Stat. § 14-306.4(b)(1) simply by using "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play[,]" N.C. Gen. Stat. § 14-306.4(a)(3), regardless of whether it is dependent upon skill or dexterity. However, Judge Ervin, in his dissenting opinion in *Sandhill Amusements, Inc. v. Sheriff of Onslow Cty.*, 236 N.C. App. 340, 762 S.E.2d 666 (2014), *rev'd sub nom. Sandhill Amusements, Inc. v. Miller*, 368 N.C. 91, 773 S.E.2d 55 (2015) (reversing the Court of Appeals majority opinion for the reasons stated in the dissenting opinion), analyzed a prior version of Plaintiffs' games at issue in this case under N.C. Gen. Stat. § 14-306.4(a)(3)(i). Judge Ervin explained,

> given that the equipment and activities protected by the [] injunction clearly involve the use of electronic devices to engage in or simulate game play based upon which a participant may win or become eligible to win a prize, the only basis upon which Plaintiffs' equipment and activities can avoid running afoul of N.C. Gen. Stat. § 14-306.4(b) is in the event that the game or simulated game involved is "dependent on skill or dexterity."

*Sandhill*, 236 N.C. App. at 365, 762 S.E.2d at 683 (quoting N.C. Gen. Stat. § 14-306.4(a)(3)(i)). To the extent our Supreme Court's adoption of Judge Ervin's dissent

in *Sandhill* signals the Court's determination that a sweepstakes game falls within Gen. Stat. § 14-306.4's "entertaining display" prohibition *only* when the video game is not dependent on skill or dexterity, I agree with Judge Bryant's concurring opinion in this case that "the games at issue do not amount to games whose outcomes are determined by skill and dexterity, but rather, chance."

Whether a game is one of skill or of chance is a question of law, reviewed de novo. *See Sandhill*, 236 N.C. App. at 367-68, 762 S.E.2d at 685; *see also Collins Coin Music Co. of N.C. v. N.C. Alcoholic Beverage Control Comm'n*, 117 N.C. App. 405, 408, 451 S.E.2d 306, 308 (1994) (treating the difference between games of chance and games of skill as an issue of law).

According to N.C. Gen. Stat. § 14-306.4, "it shall be unlawful for any person to operate, or place into operation, an electronic machine or device to . . . [c]onduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize." N.C. Gen. Stat. § 14-306.4(b). As noted in the majority opinion, the question of whether Plaintiffs' games involve "sweepstakes" within the meaning of N.C. Gen. Stat. § 14-306.4(a)(5) is not in dispute, but rather whether the sweepstakes are conducted through the use of an "entertaining display" within the meaning of N.C. Gen. Stat. § 14-306.4(a)(3).

An "entertaining display"

> means visual information, capable of being seen by a
> sweepstakes entrant, that takes the form of actual game

play, or simulated game play, such as, by way of illustration and not exclusion:

. . .

i. Any other video game not dependent on skill or dexterity that is played while revealing a prize as the result of an entry into a sweepstakes.

N.C. Gen. Stat. § 14-306.4(a)(3). The terms "game" and "skill or dexterity" as used in

N.C. Gen. Stat. § 14-306.4 are not statutorily defined. However, Judge Ervin adopted

the following analysis:

> "A game of chance is such a game as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance. A game of skill, on the other hand, is one in which nothing is left to chance, but superior knowledge and attention, or superior strength, agility and practice gain the victory. In *State v. Stroupe*, 238 N.C. 34, 76 S.E.2d 313 (1953), a case involving the legality of the game of pool, our Supreme Court stated:
>
>> It would seem that the test of the character of any kind of a game of pool as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each particular kind of game. Or to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment."

*Sandhill*, 236 N.C. App. at 368, 762 S.E.2d at 685 (internal quotation marks and

citations omitted) (quoting *Collins Coin Music*, 117 N.C. App. 405, 408, 451 S.E.2d

306, 308 (1994) (addressing the meaning of the terms as used in Article 37 of Chapter

14 of the General Statues, a set of provisions governing gambling-related activities that includes N.C. Gen. Stat. § 14-306.4)).

Based on this meaning of the relevant statutory language, the *Collins Coin Music* Court determined that the video poker game in question was one of chance rather than one of skill because, in part,

> although a player's knowledge of statistical probabilities can maximize his winnings in the short term, he cannot determine or influence the result since the cards are drawn at random. In the long run, the video game's program, which allows only a predetermined number of winning hands, negates even this limited skill element.

*Collins Coin Music*, 117 N.C. App. at 409, 451 S.E.2d at 308 (internal citation omitted). "As a result, the essential difference between a game of skill and a game of chance for purposes of our gambling statutes, including N.C. Gen. Stat. § 14-306.4, is whether skill or chance determines the final outcome and whether chance can override or thwart the exercise of skill." *Sandhill*, 236 N.C. App. at 369, 762 S.E.2d at 685.

Similarly, Judge Ervin considered whether version 1.03 of Plaintiffs' sweepstakes game was a game of skill or chance, and "conclude[d] that the element of chance dominates the element of skill in the operation" of Plaintiffs' machines. *Id.* at 370, 762 S.E.2d at 686. Judge Ervin explained:

> As was the case with the video poker game at issue in *Collins Coin Music*, the machines and equipment at issue here only permitted a predetermined number of winners. For that reason, a player who plays after the

predetermined number of winners has been reached will be unable to win a prize no matter how much skill or dexterity he or she exhibits. In addition, use of the equipment at issue here will result in the playing of certain games in which the player will be unable to win anything of value regardless of the skill or dexterity that he or she displays. Finally, the extent to which the opportunity arises for the "nudging" activity upon which the trial court's order relies in support of its determination that the equipment in question facilitated a game of "skill or dexterity" appears to be purely chance-based. Although Mr. Farley persuaded the trial court that the outcome of the games facilitated by Plaintiffs' equipment and activities depended on skill or dexterity, the only basis for this assertion was the player's ability to affect the outcome by "nudging" a third symbol in one direction or the other after two matching symbols appeared at random on the screen. Assuming for purposes of argument that this "nudging" process does involve skill or dexterity, I am unable to see how this isolated opportunity for such considerations to affect the outcome overrides the impact of the other features which, according to the undisputed evidence, affect and significantly limit the impact of the player's skill and dexterity on the outcome. In light of these inherent limitations on a player's ability to win based upon a display of skill and dexterity, an individual playing the machines and utilizing the equipment at issue simply does not appear to be able to "determine or influence the result over the long haul."

*Id.* at 370, 762 S.E.2d at 686 (internal citation omitted).

The version of the games examined in the present case, version 1.22, includes several changes made after the *Sandhill* decision: First, a "governor" that had prevented players from winning large prizes in quick succession in version 1.03 was eliminated. Second, a "final ticket" feature was added, under which prizes lost through incorrect nudging can be won on later turns. Third, a "winner every time"

feature was added. In version 1.03, on 75% of turns, players could not win a prize. In version 1.22, kiosks can be set so these turns will generate a token prize. On these turns, a "¢" symbol appears on one of the reels. If the player nudges the "¢" symbol to the middle line, the player receives several cents. Fourth, a "double nudge" feature was added. In version 1.03, players needed to nudge only one symbol to produce a winning combination. In version 1.22, the kiosks can be set so that two symbols must be nudged. The trial court found that "[t]he primary difference between version 1.03 and version 1.22 is a feature that requires the participant in the Gift Surplus sweepstakes to exercise more skill and more dexterity to realize a prize (i.e., the "double nudge")."

But even with these new features all activated, version 1.22 continues to be a game of chance. First, as in version 1.03, the set of symbols appearing to the player in the first instance is not determined by the player's skill or dexterity, but rather is "purely chance-based." *Sandhill*, 236 N.C. App. at 370, 762 S.E.2d at 686. This set of symbols determines the outcomes potentially available to the player: i.e., whether the player falls into the 25% bucket of players who can win a significant prize, or falls into the 75% bucket of players who can only win a token prize. Chance, rather than skill or dexterity, thus wholly determines whether a significant prize can be won. *See Collins*, 117 N.C. App. 409, 451 S.E.2d at 308 ("[T]he video game's program, which allows only a predetermined number of winning hands, negates even this limited skill element."). The addition of token prizes for what are effectively losing spins does not

change the analysis, as their availability, like the availability of significant prizes, is wholly determined by chance. Second, the elimination of the "governor" feature merely amplifies the speed by which chance may provide significant prizes to the player, and thus also fails to change the analysis. Third, the addition of the "final ticket" feature actually diminishes the impact skill plays in version 1.22, by forgiving the player's failure to exercise whatever skill is required to claim the prizes chance makes potentially available. And finally, the addition of a second nudge does not meaningfully distinguish version 1.22 from version 1.03. Even "[a]ssuming for purposes of argument that this 'nudging' process does involve skill or dexterity[,]" *Sandhill*, 236 N.C. App. at 370, 762 S.E.2d at 686, the de minimis amount of skill and dexterity involved in executing two nudges fails to transform a game of chance into one wherein skill and dexterity predominate. As Judge Ervin said regarding the single-nudge feature in version 1.03, "I am unable to see how this isolated opportunity for such considerations to affect the outcome overrides the impact of the other features which, according to the undisputed evidence, affect and significantly limit the impact of the player's skill and dexterity on the outcome." *Id.* at 370, 762 S.E.2d at 686.

Accordingly, as the majority opinion concludes, Plaintiffs' kiosks operate sweepstakes through an entertaining display in violation of N.C. Gen. Stat. § 14-306.4, and the permanent injunction prohibiting law enforcement officers from enforcing violations of the law against Gift Surplus should be vacated.

No. COA18-1140 – *Gift Surplus, LLC, et al. v. State, et al.*

BRYANT, Judge, concurring in the result.

Pursuant to General Statutes, section 14-306.4 ("Electronic machines and devices for sweepstakes prohibited"), it is unlawful "to operate, or place into operation, an electronic machine or device to . . . (1) [c]onduct a sweepstakes through the use of an entertaining display, . . . [or] (2) [p]romote a sweepstakes that is conducted through the use of an entertaining display . . . ." N.C. Gen. Stat. § 14-306.4(b)(1), (2) (2017). For the purposes of General Statutes, section 14-306.4, our General Assembly has defined "sweepstakes" to mean "any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance." *Id.* § 14-306.4(a)(5). The term "entertaining display" has been defined to mean

> visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play, such as . . . :
>
> . . . .
>
> h. A video game based on or involving the random or chance matching of different pictures, words, numbers, or symbols *not dependent on the skill or dexterity* of the player.
>
> i. Any other video game *not dependent on skill or dexterity* that is played while revealing a prize as the result of an entry into a sweepstakes.

*Id.* § 14-306.4(a)(3)h., i. (emphasis added).

In a dissenting opinion in *Sandhill Amusements, Inc. v. Sheriff of Onslow Cnty.*, 236 N.C. App. 340, 762 S.E.2d 666 (2014), *rev'd sub nom. Sandhill Amusements, Inc. v. Miller*, 368 N.C. 91, 773 S.E.2d 55 (2015) (per curiam) (reversing the Court of Appeals majority opinion for the reasons stated in the dissenting opinion), Judge Ervin addressed the categorical terms "skill or dexterity" and "game of chance," framing the issue before the Court as such:

> [I]n order to determine whether . . . [the] [p]laintiffs'
> equipment and activities were lawful, we must first
> ascertain the difference between a game of skill and a game
> of chance as those terms are used in our gambling statutes
> and then determine which side of the resulting line [the]
> [p]laintiffs' equipment and activities fall on.

*Id.* at 367–68, 762 S.E.2d at 685 (Ervin, J., dissenting opinion). Acknowledging that the term "skill or dexterity," as used in section 14-306.4, had not been statutorily defined, Judge Ervin noted that the term, as used in Article 37 of Chapter 14 of our General Statutes—"a set of provisions governing gambling-related activities that includes N.C. Gen. Stat. § 14–306.4, ha[d] been addressed by this Court." *Id.* at 367, 762 S.E.2d at 685. In particular, the dissent referred to this Court's reasoning in *Collins Coin Music Co. v. N.C. Alcoholic Beverage Control Comm'n*, 117 N.C. App. 405, 451 S.E.2d 306 (1994) (addressing whether video poker games were prohibited by General Statutes, section 14-306 (1993)).

> A game of chance is "such a game as is determined entirely
> or in part by lot or mere luck, and in which judgment,
> practice, skill or adroitness have honestly no office at all,

> or are thwarted by chance." *State v. Eisen*, 16 N.C. App. 532, 535, 192 S.E.2d 613, 615 (1972) (citation omitted). "A game of skill, on the other hand, is one in which nothing is left to chance, but superior knowledge and attention, or superior strength, agility and practice gain the victory." *Id.* at 535, 192 S.E.2d at 615–16 (citation omitted). In *State v. Stroupe*, 238 N.C. 34, 76 S.E.2d 313 (1953), a case involving the legality of the game of pool, our Supreme Court stated:

> It would seem that the test of the character of any kind of a game of pool as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each particular kind of game. Or to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment.

> *Id.* at 38, 76 S.E.2d at 316–17.

*Sandhill Amusements*, 236 N.C. App. at 368, 762 S.E.2d at 685 (Ervin, J., dissenting) (quoting *Collins Coin Music Co.*, 117 N.C. App. at 408, 451 S.E.2d at 308). Judge Ervin opined "the essential difference between a game of skill and a game of chance for purposes of our gambling statutes, including N.C. Gen. Stat. § 14-306.4, is whether skill or chance determines the final outcome and whether chance can override or thwart the exercise of skill." *Id.* at 369, 762 S.E.2d at 685. *See also State v. Spruill*, 237 N.C. App. 383, 387, 765 S.E.2d 84, 87 (2014) ("Section 14-306.4 seeks to prevent the use of entertaining displays in the form of video games to conduct sweepstakes wherein the prize is determined by chance." (citing N.C. Gen. Stat. § 14-306.4(b)(1))).

3

Where the exercise of skill and dexterity is the dominant character of a game which determines the final outcome, the game does not satisfy the statutory definition of a sweepstakes, though an element of chance may be present. *See* N.C. Gen. Stat. § 14-306.4(a)(5) (defining "sweepstakes" to mean "any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, *the determination of which is based upon chance*" (emphasis added)); *see also Spruill*, 237 N.C. App. at 387, 765 S.E.2d at 87; *Sandhill Amusements*, 236 N.C. App. at 368, 762 S.E.2d at 685 (Ervin, J., dissenting).

The majority opinion in the current matter states that

> we need not decide whether these sweepstakes are chance or skill-based in order to hold that they violate N.C.G.S. § 14-306.4.
>
> . . . .
>
> Regardless of whether it is dependent on skill or dexterity, a sweepstakes falls within the entertaining display prohibition simply if it is 'visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play[.] N.C.G.S. § 14-306.4(a)(3)."

I believe this reading of section 14-306.4 is too broad.

However, I believe the games at issue do not amount to games whose outcomes are determined by skill and dexterity, but rather, chance. As a result, the games are sweepstakes in violation of General Statutes, section 14-306.4.

4

Because I agree that the games created by Gift Surplus, as described in the majority opinion are in violation of General Statutes, section 14-306.4 and that the injunction prohibiting law enforcement officers from enforcing violations of law should be dissolved, I concur in the result reached by the majority.