IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-557

Filed 01 August 2023

Catawba County, No. 18 CVS 2674

FUN ARCADE, LLC, and BARRACUDA VENTURES, LLC, Plaintiffs,

v.

CITY OF HICKORY, THURMAN WHISNANT, HICKORY CHIEF OF POLICE, in his official capacity, CITY OF CONOVER, ERIC LOFTIN, CHIEF OF POLICE, in his official capacity, Defendants.

Appeal by Plaintiffs from an order entered 15 March 2022 by Judge Gregory R. Hayes in Catawba County Superior Court. Heard in the Court of Appeals 25 January 2023.

> *Posch Law Firm, by Gregory A. Posch, and Trapp Law PLLC, by Jonathan W. Trapp, for Plaintiffs-Appellants.*

> *Cranfill Sumner LLP, by Steven A. Bader, Patrick H. Flanagan, Martin & Monroe Pannell, P.A., by Monroe Pannell, and Young, Morphis, Bach & Taylor, LLP, by Paul E. Culpepper, for Defendants-Appellees.*

WOOD, Judge.

Section 14-306.4 of our General Statutes outlaws the operation of electronic sweepstakes machines and similar games of chance. We are tasked in this appeal with determining whether the controversial game Ocean Fish King has been caught up in the broad net of our state's sweepstakes prohibition.

## I. Background

Fun Arcade, LLC, and Barracuda Adventures, LLC, (together "Plaintiffs") own several businesses that host certain gaming machines in this state. Plaintiffs' facilities allow players to buy gaming e-credits at kiosks and select to play from a host of electronic games. Players can exchange their gaming e-credits for cash value at a sales counter. The games available include titles such as Cop the Lot, Amigos Gold, Super Diamond Deluxe, Wheel of Riches, and Ocean Fish King. The game Ocean Fish King is the subject of this appeal.

In August 2018, the cities of Hickory and Conover and their respective Police Chiefs, Thurman Whisnant and Eric Loftin, (altogether "Defendants") sought to enforce against Plaintiffs this state's prohibition of slot machines and, later, electronic sweepstakes machines for their operation of Ocean Fish King and similar games.

Upon notice of Defendants' intent to enforce the prohibition, Plaintiffs filed a complaint for a declaratory judgment, a temporary restraining order, and a temporary and permanent injunction against Defendants on 20 September 2018 in Catawba County Superior Court. Defendants filed Answers to the complaint in December 2018.

On 14 March 2019, Defendants filed an expert affidavit from Andrew Baran ("Baran"), a Senior Engineering Manager for Gaming Laboratories International, LLC. Baran conducted an analysis of Ocean Fish King to determine the game's configuration settings and the effect of player interactions in relation to the game's

outcome. The object of Ocean Fish King is to shoot at and destroy sea creatures that move around the screen. There are many sea creatures on the screen at any given time, so it is difficult for a player to miss hitting a sea creature with a shot. During the game, each shot taken at a sea creature equates to one wager being placed. A player is allowed to choose how many credits they wish to wager on each shot fired. Once they have selected the wager, the player uses a joystick to aim and shoot at the sea creatures. After each shot fired, the player's credit balance is debited by the amount of the selected wager. When a shot hits a sea creature, the player is awarded a credit value based on the sea creature that was destroyed.

Baran observed no pattern for the number of shots required to destroy a sea creature. For example, a sea creature requiring thirty shots to be destroyed may require only five shots to be destroyed at a later point in the game. By analyzing the game's software, Baran determined that there was no specific strategy or advantage that a player could learn to receive a better outcome in the game. Furthermore, the game has a measurement called the return to player calculation ("RTP"). The RTP is the ratio of money paid to play the game to the amount of money returned to the player at the end of the game. Ocean Fish King has an RTP of approximately 97% to 99%, which means that, on average, 97% to 99% of the money paid to play the game is returned to the player in cash.

Plaintiffs filed an expert affidavit from Dr. Neil Mulligan ("Mulligan"), a Professor and Director of the PhD program in Cognitive Psychology at the University

of North Carolina at Chapel Hill, on 20 March 2019. Mulligan described the process of playing the game, and the way the software operated, in the same manner Baran described it. Mulligan testified that the sea creatures vary in size, movement, and value and that the number of shots needed to destroy a creature is unknown to the player. However, he contended that players could develop a skill to memorize the game's patterns over time. He reasoned that a novice player could improve with experience in terms of accuracy, selection of optimal targets, and in terms of overall score if the player repeatedly played the game. In addition, Mulligan stated that success in the game was determined by the player's dexterity, because the players are required to aim at the creatures. Using Mulligan's testimony, Plaintiffs contend Ocean Fish King is not a lottery game because it is a game of skill.

On 12 March 2021, Defendants filed a joint motion for summary judgment against Plaintiffs. The matter was held in abeyance until our Supreme Court issued its decision in *Gift Surplus v. State ex. rel. Cooper*. Thereafter, Defendants noticed their motion for hearing.

Plaintiffs moved to continue the hearing alleging procedural error with the timing of Defendants' service of their motion. On 14 March 2022, the trial court denied the motion to continue the summary judgment hearing and granted Defendants' motion for summary judgment on 15 March 2022. Plaintiffs appeal as of right pursuant to N.C. Gen. Stat. § 7A-27(b)(1).

## II. Standard of Review

We review a trial court's summary judgment order *de novo. In re Will of Jones*, 362 N.C. 569, 573, 669, S.E.2d 572, 576 (2008). "Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Reese v. Mecklenburg Cnty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009) (citations omitted). A trial court's summary judgment order "is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. at 573, 669, S.E.2d at 576 (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). "[T]he trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted). "If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial." *In re Will of Jones*, 362 N.C. at 573, 669, S.E.2d at 576. "Nevertheless, '[i]f there is any question as to the weight of evidence, summary judgment should be denied.'" *Id.* at 573-74, 669 S.E.2d at 576 (quoting *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999)).

A trial court's denial of a motion to continue is reviewed for abuse of discretion. *Morin v. Sharp*, 144 N.C. App. 369, 373, 549 S.E.2d 871, 873 (2001). "The moving party has the burden of proof of showing sufficient grounds to justify a continuance." *Id.*

### III. Discussion

On appeal, Plaintiffs first argue the trial court erred when it granted Defendant's motion for summary judgment regarding Ocean Fish King, as the court identified it as a prohibited gaming machine despite expert opinion to the contrary. Plaintiffs also argue the trial court erred when it denied Plaintiffs' motion to continue the summary judgment hearing. Plaintiffs contend that Defendants' service of briefs in support of their motion was untimely. For the reasons outlined below, we affirm the trial court's rulings.

### A. Summary Judgment Order

It is generally unlawful "to operate, or place into operation, an electronic machine or device to . . . [c]onduct a sweepstakes through the use of an entertaining display." N.C. Gen. Stat. § 14-306.4(b)(1) (2022). "Sweepstakes," in this sense, is defined as "any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, *the determination of which is based upon chance*." *Id.* § 14-306.4(a)(5) (emphasis added).

Applying this prohibition, we are informed by our Supreme Court's recent decision in *Gift Surplus, LLC v. State ex rel. Cooper*, 380 N.C. 1, 868 S.E.2d 20 (2022). There, the court emphasized that a determination as to whether an electronic game violates the prohibition turns on whether the game is one of chance or one of skill. *Gift Surplus*, 380 N.C. at 10, 868 S.E.2d at 26. The court defined games of chance

and skill consistent with a common understanding of the terms.

> A game of chance is such a game as is determined entirely
> or in part by lot or mere luck, and in which judgment,
> practice, skill or adroitness have honestly no office at all,
> or are thwarted by chance . . . A game of skill, on the other
> hand, is one in which nothing is left to chance, but superior
> knowledge and attention, or superior strength, agility and
> practice gain the victory.

*Id.* (quoting *Sandhill Amusements, Inc. v. Sheriff of Onslow Cnty.*, 236 N.C. App. 340,

368, 762 S.E.2d 666, 685 (2014) (Ervin, J., dissenting)).  In determining whether a

game is one of chance or one of skill, the court re-affirmed the use of a predominant-

factor test.  *Id.*  This test asks if chance or skill " 'is the dominating element that

determines the result of the game, to be found from the facts of each kind of game,'

or, 'to speak alternatively, whether . . . the element of chance is present in such a

manner as to thwart the exercise of skill or judgment.' "  *Id.* (quoting *Sandhill*, 236

N.C. App. at 368, 762 S.E.2d at 685 (Ervin, J., dissenting)).  We must therefore decide

if, "viewed in its entirety, the results produced by that equipment in terms of whether

the player wins or loses and the relative amount of the player's winnings or losses

varies primarily with the vagaries of chance or the extent of the player's skill and

dexterity."  *Id.*, 380 N.C. at 10, 868 S.E.2d at 27 (quoting *Crazie Overstock

Promotions, LLC v. State*, 377 N.C. 391, 403, 858 S.E.2d 581, 589 (2021)).

Plaintiffs first argue the trial court erred in granting Defendants' summary

judgment motion because material issues of fact remained as to whether Ocean Fish

King is a game of chance or skill.  Plaintiffs point to conflicting expert opinion to

support this argument.

Defendants' expert testified in his affidavit that he believed Ocean Fish King operates predominantly as a game of chance, in which a game's outcome is predetermined from a formula programed into the game. Conversely, Plaintiffs' expert testified that the game is one of skill and highlighted the hand-eye coordination, weapon selection, visual recognition, and other considerations necessary to succeed at the game.

Plaintiffs, however, do not disagree with Defendants as to how the game is played. Both acknowledge, for example, that players must use controllers to aim weapons at a screen full of fish, shoot the fish with these weapons, and receive points as a result of destroying the fish. "[W]hether chance or skill predominates in a given game is a mixed question of fact and law and is therefore reviewed de novo when there is no factual dispute about how a game is played." *Id.* at 11, 868 S.E.2d at 27. Thus, though the experts disagree as to whether the game is predominantly one of skill or chance, the trial court did not err in its determination when there is no dispute as to how the game actually is played.

Plaintiffs next argue that the trial court otherwise erred in determining that chance predominates over skill with Ocean Fish King, claiming that the trial court improperly applied the predominant-factor test. To the contrary, the court properly considered the uncontested means of play when it determined that Ocean Fish King is predominantly a game of chance.

As explained, the reviewing court must consider whether the game's outcome "varies primarily with the vagaries of chance or the extent of the player's skill and dexterity." *Id.* at 12, 868 S.E.2d at 28 (quoting *Crazie Overstock*, 377 N.C. at 403, 858 S.E.2d at 589). Using this test, or variances of it, our Supreme Court concluded that bowling is predominantly a game of skill, *State v. Gupton*, 30 N.C. (8 Ired.) 271, 275 (1848), whereas poker is predominantly a game of chance*, Collins Coin Music Co. v. N.C. Alcoholic Beverage Control Comm'n*, 117 N.C. App. 405, 409, 451 S.E.2d 306, 309 (1994). Again, *Gift Surplus* instructs. There, our Supreme Court held a game resembling a slot machine, but which featured "double-nudging" and always paid out some winnings, violated the electronic sweepstakes prohibition. *Gift Surplus*, 380 N.C. at 15, 868 S.E.2d at 30. Players could only slightly influence the game's outcome. *Id.* It concluded, even if a player were to become more skilled, "chance would always predominate because, when chance determines the relative winnings for which a player is able to play, chance 'can override or thwart the exercise of skill.'" *Id.*, at 14, 868 S.E.2d at 29 (quoting *Sandhill*, 236 N.C. App. at 369, 762 S.E.2d at 685).

In the present case, Ocean Fish King players use digital weapons, controlled with a joystick, to shoot projectiles at sea creatures as they appear on the display screen. The screen is crowded with fish. Each fish requires a set amount of hits to destroy. The player does not know how many hits are required to destroy a given fish, and similar looking fish do not necessarily require the same number of hits every game.

Applying the predominant-factor test here, we likewise hold that Ocean Fish King is predominantly a game of chance. Though players must have some measure of dexterity to use the joystick, a player cannot know beforehand how many hits are necessary to destroy fish and, thus, cannot strategically optimize a favorable return on credits. Since a player wins credits proportional to the number and type of fish destroyed, this game is predominantly one of chance, and any "skill and dexterity involved is essentially *de minimis*." *Id.* at 14, 868 S.E.2d at 29.

This is true though the game, at first glance, appears less like a Vegas-styled slot machine and more like a classic arcade game, where multiple players feverishly compete with each other for the winning score. Yet, appearance is not controlling. "The Court will inquire, not into the name, but into the game, however skillfully disguised, in order to ascertain if it is prohibited." *Id.* (quoting *Hest Techs., Inc. v. State ex rel. Perdue*, 366 N.C. 289, 290, 749 S.E.2d 429, 431 (2012)). The trial court did not err when it granted summary judgment in favor of Defendants.

## B. Continuance

Plaintiffs next argue the trial court improperly denied their motion to continue the summary judgment hearing because Plaintiffs did not timely receive service of Defendants' brief in support of their motion. Plaintiffs argue that Defendants should have served their brief on Wednesday, 9 March 2022 instead of Thursday, 10 March 2022, because the hearing was scheduled for the following Monday, 14 March 2022.

Rule 5(a1) of the North Carolina Rules of Civil Procedure states that briefs

must be served at least two days before the scheduled hearing on the motion. N.C. Gen. Stat. § 1A-1, Rule 5(a1) (2022). If the brief is not served on the opposing party at least two days before the hearing on the motion, the court may "continue the matter for a reasonable period" to allow the opposing party to respond to the brief. *Id.* Rule 6(a) states that the day of the hearing is included in the two-day window, as long as it is not a Saturday, Sunday, or legal holiday. § 1A-1, Rule 6(a).

This Court contemplated Plaintiffs' argument in *Harrold v. Dowd*, 149 N.C. App. 777, 786-87, 561 S.E.2d 914, 921 (2002). There, a brief was served upon opposing counsel on a Thursday when the hearing was scheduled for the following Monday. *Id.* The court determined that the service was proper under Rule 5(a1). *Id.* Likewise, we conclude Defendants' brief was timely served. Plaintiffs' argument is without merit.

**IV. Conclusion**

Defendants timely served their brief in support of their motion for summary judgment prior to the hearing. The trial court did not abuse its discretion in denying Plaintiffs' motion to continue the hearing. Because N.C. Gen. Stat. § 14-306.4 outlaws the operation of electronic sweepstakes machines and similar games of chance, Plaintiffs' operation of Ocean Fish King violated the prohibition against electronic sweepstakes machines. We therefore affirm the trial court's order granting Defendants' motion for summary judgment.

AFFIRMED.

Judges ARROWOOD and COLLINS concur.